345 So.2d 1077 (1977)
NATIONAL INDEMNITY CO. et al., Appellants,
v.
The HOME INSURANCE CO., Appellee.
No. 76-179.
District Court of Appeal of Florida, Third District.
April 5, 1977.
Rehearing Denied June 1, 1977.
Virgin, Whittle & Popper and Gary E. Garbis, Greene & Cooper, Corlett, Merritt, Killian & Sikes, Miami, for appellants.
Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Jeanne Heyward, Miami, for appellee.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
NATHAN, Judge.
This is an appeal by several insurance carriers from a trial judge's decision determining responsibility for the payment of damages to an accident victim, Howard Homan. Homan's motorcycle was struck by an automobile driven by Elissa D. Timoner. The vehicle had been leased from Main Line Fleets, Inc.
Homan initially sued Elissa Timoner, as operator of the automobile, Main Line Fleets, Inc., as the holder of legal title to the vehicle, and their respective insurance carriers. Pursuant to a stipulated agreement, the defendants agreed to a reasonable settlement of Homan's claim and to present the question of insurance coverage to the trial judge, while simultaneously reserving the right to appeal from the court's determination.
The trial judge ultimately found that Main Line Fleets, Inc., was primarily liable for Homan's injuries as owner of the lease vehicle; that North River Insurance Company provided primary coverage for Main Line Fleets, although the policy with North River was procured and paid for by Elissa Timoner and despite the fact that Main Line Fleets is not mentioned in the policy; that policies issued by National Indemnity Company and American Home Assurance Company were excess policies covering Main Line Fleets; and that Home Insurance Company was an excess insurer for Elissa Timoner.
North River admitted primary liability prior to the trial judge's determination and tendered $100,000  the limit of its policy  to Homan. Since the stipulated settlement with Homan was for $300,000, it remained for the trial judge to determine responsibility *1078 for payment of the balance of the settlement. In accordance with the court's findings as noted above, National Indemnity was required to pay its $100,000 policy limits and American Home Assurance was required to pay the remaining $100,000 under its umbrella coverage of Main Line Fleets. Home Insurance was not required to pay any part of the settlement agreement. National Indemnity and American Home Assurance thereafter took this appeal.
Appellants have asserted numerous reasons in their respective briefs as to why appellee Home Insurance should have been held responsible for paying the balance of the settlement amount which remained after the $100,000 payment by North River. In particular, it is argued that the trial court erred in finding that Main Line Fleets was primarily liable as owner of the lease vehicle. We agree, and accordingly reverse the determination of the trial court.
Our decision necessarily requires a discussion of the Florida Supreme Court's ruling in Roth v. Old Republic Insurance Co., 269 So.2d 3 (Fla. 1972). There the Court held that the lessor and its insurer could not escape liability for an accident caused by Roth, a permittee of the lessee, through the use of a collateral agreement between the lessor and lessee which provided that the leased vehicle would not be operated by anyone other than the lessee without the express consent of the lessor. Despite the fact that the Roth case found the lessor to be primarily liable for injuries caused by the accident, we feel that it is not controlling here due to the marked differences between that case and the factual situation presented herein.
In Roth, the Supreme Court was clearly concerned with the threat which would be posed to the public if lessors were able to avoid liability for accidents caused by permittees of a lessee:
"The Susco [Susco Car Rental System v. Leonard, Fla., 112 So.2d 832] and Blanton [American Fire & Cas. Co. v. Blanton, Fla.App., 182 So.2d 36] cases recognize that in the very nature of modern automobile use a lessee of a rental car often has to turn the car over to car park, garage, or filling station personnel and others for temporary operation and that it would be unreasonable to negate the rental car agency's liability and its insurance coverage in case of accident because of the existence of a collateral or side agreement of the kind here involved. Often such permittees of rental car lessees temporarily driving rental cars would not be as fortunate as Roth and have the protection of their own personal auto liability insurance coverage, rendering it even more difficult for injured members of the public to recover their losses arising from the negligence of drivers of rental cars." Roth, 269 So.2d at 6-7.
The Court therefore felt that no private contract could be allowed to abrogate the owner's "implied consent" to ordinary usage by the lessee or his permittees.
Further, the Roth court noted on several occasions that the lessee had paid the "item of premium" for the insurance coverage afforded by the lessor's insurer. The Court specifically approved this court's ruling in Morse Auto Rentals, Inc. v. Lewis, 161 So.2d 235 (Fla. 3d DCA 1964), wherein it was held that a lessee who was an active tortfeasor was released from liability as to the owner of the lease vehicle where the lessee had compensated the owner for liability insurance. This rule was announced as an exception to the general rule that one who is held vicariously liable may recover from the active tortfeasor.
The factual situation surrounding the instant appeal is distinguishable from Roth in two critical respects. First, the lease agreement clearly states that the lessee was to indemnify and hold harmless Main Line Fleets from losses arising out of the use of the vehicle. To that effect, the lessee was to procure vehicle liability insurance with a minimum limit of $100,000 per person. This provision was in complete conformity with Main Line Fleets' policy with its primary carrier, National Indemnity. According to the terms of that agreement, Main Line Fleets was required to obtain a certificate of insurance from the lessee in the same *1079 amounts as were required in the lease instrument. Any failure to obtain such a certificate would void coverage by National Indemnity. Thus, there was no "collateral agreement" which conflicted with or negated liability which would have otherwise arisen under the lessor's insurance policy, as there was in Roth.
The fact that the lessee was required to procure her own insurance demonstrates a second distinction from the situations involved in Roth and Morse, supra. In those cases, the lessees were required to pay the lessors for insurance coverage. Here, the lessee was required to obtain and pay for her own insurance, independent of any insurance which the lessee might procure itself.
In light of these facts, we find that Roth is inapplicable here. We are of the opinion that Roth did not announce a policy of virtual strict liability for lessors of automobiles. There is no harm to the public stemming from a long-term lease agreement which requires a lessee to purchase his own insurance, indemnifying the lessor as well, especially where the lessee must certify financial responsibility, as was the case here. Nor are we faced with a situation where the lessee has paid a premium to the lessor for insurance, only to be later faced with a claim for indemnity. Given these facts, we feel that there is no need to derogate the primary common law liability of the active tortfeasor.
We therefore find that the trial court erroneously concluded that Main Line Fleets was primarily liable as owner of the lease vehicle. Accordingly, the judgment is reversed and remanded to the trial court with directions to vacate the judgment against National Indemnity Company and American Home Assurance Company and to enter a judgment against Home Insurance Company as the primary excess carrier.
Reversed and remanded with directions.