**INDIANA INSURANCE CO., an Indiana corporation,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**MISSION NATIONAL INSURANCE CO., a California corporation,**
**Defendant–Appellant/Cross–Appellee,**

v.

**Bric STANGER; Gerald L. Hulscher; Noland Stanger, et al.,**
**Plaintiff-third-party-defendant.**

Nos. 86–4379, 86–4400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1989.

Decided April 27, 1989.

Mark Thorsrud, Thorsrud Cane & Paulich, P.S., Seattle, Wash., for Mission Nat. Ins. Co.

John P. Erlick, Cozen and O'Connor, Seattle, Wash., for Indiana Insurance.

Before SKOPIL, PREGERSON and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Indiana Insurance Co. (Indiana), an Indiana corporation, brought a suit for declaratory judgment against Mission National Insurance Co. (Mission), a California corporation, seeking construction of the relationship of the two companies' policies as they involved excess insurance. Washington law governed this case of diversity jurisdiction. The district court granted Indiana's summary judgment motion as to Mission's liability on its policy, but granted Mission's motion for summary judgment as to its obligation being subsequent to the fulfillment of Indiana's obligation. We re-

verse both summary judgments and remand for trial.

## FACTS

On March 20, 1983 William LaBossier had an automobile accident as he drove a Datsun pickup truck. William was 17, a high school student living at home. Two fellow students, who were passengers, were injured. Suits were brought in their names against William's parents, Larry and Sandra LaBossier, and against their closely-held companies, Machinists, Inc., and Machinists (DSR), Inc.

The three insurance companies involved were the following:

(1) Safeco Insurance Co. of America (Safeco) had issued a policy to the corporations and to Larry LaBossier and Sandra LaBossier individually, providing coverage of $500,000 for each accident. The policy covered several automobiles and the Datsun pickup truck. The declarations were set forth under the heading "Commercial Policy Declarations," where it was declared that the business insured was a machine shop. The insurance covered "anyone else [in addition to the insured] while using with your permission a covered auto you own."

(2) Indiana had issued an excess liability policy to Larry and Sandra LaBossier. The policy referred to underlying insurance policies which covered automobiles, home owners liability and water craft. The limit of liability was $5 million. The insurance covered any person using an automobile owned by the insured with the permission of the insured. The policy had a clause as to "other insurance" that reads as follows:

> 6. **OTHER INSURANCE:** The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the insured and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess or contingent, provided that if such other insurance provides indemnity only in excess of a stated amount of liability per occurrence, the insurance afforded by this policy shall contribute therewith with respect to such part of

ultimate net loss as is covered hereunder, but Indiana shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of said amount and the amounts which would have been payable under each other excess indemnity policy applicable to such loss, had each such policy been the only policy so applicable.

(3) Mission had issued an "Umbrella Liability Policy" to Machinists, Inc., Production Machinists and Machinists (DSR) with a limit of $5 million. The policy referred to the underlying insurance as that of Safeco for automobile liability in the amount of $500,000. This policy, too, had a provision as to "other insurance" that read as follows:

> If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

## PROCEEDINGS

Safeco accepted liability and paid to the limits of its policy as to one plaintiff. Indiana and Mission disputed their responsibility vis-a-vis each other.

On Indiana's motion for summary judgment against Mission the district court on June 6, 1986 ruled that the question of ownership of the Datsun was a conclusion of law to be derived from the totality of the facts. The court noted that the Datsun was registered jointly under the names of both Larry and William LaBossier. The court concluded that, therefore, Larry La-Bossier was "presumptively an owner of the vehicle." The court further found that the only facts supporting Mission's contention that this presumption was rebutted and that Larry did not own the truck were

that both Larry and William had furnished testimony that they did not think of Larry as the owner and that on the day of the accident William was not using the truck with the specific knowledge and consent of his father. This evidence the court held was "insufficient to rebut the presumption of ownership, especially given the strong showing of probative facts supporting that presumption in this case." The court further ruled that Larry had extended "general permission" to William to use the truck. The court concluded that Mission had liability under its policy.

On cross-motions for summary judgment as to the apportionment between the two insurers, the district court ruled on October 31, 1986 that Mission was liable for damages only after the Safeco and Indiana policies had been exhausted.

Mission appealed from the district court's determination that its policy extended coverage. Indiana appealed from the court's ruling that Mission was not required to contribute.

On February 9, 1987 Indiana settled with the other plaintiff for $1,200,000. In exchange for this payment release from liability was given to Larry and Sandra LaBossier; Machinists, Inc.; Machinists (DSR), Inc.; Production Machinists; Safeco; Indiana; and Mission.

## ANALYSIS

### The Ownership of the Datsun

Contrary to the conclusion of the district court, there are material facts in dispute which cannot be resolved by summary judgment. Fed.R.Civ.P. 56(c). Under Washington law to determine "whether an automobile is owned by an unemancipated minor child residing at home, or by his parents," the following elements must be considered:

1. Who paid for the car.
2. Who had the right to control the use of the car.
3. The intent of the parties who bought and sold the car.
4. The intent of the parents and the child relative to ownership.

5. To whom did the seller make delivery of the car.
6. Who exercised property rights in the car from the date of its purchase to the date of the accident.
7. Any other circumstantial evidence. *Coffman v. McFadden*, 68 Wash.2d 954, 416 P.2d 99, 102 (1966).

As to 1, William in deposition testimony said that he had paid $2,000 down for the car and that he had made most of the monthly payments until he went to college. His father had co-signed the note to purchase the car, and his parents had kept up the payments after he had gone to Boston University. As to 2, William's deposition indicated that normally his parents would not use the Datsun but if their cars were not available, they might use it. In an affidavit the father, Larry, said that he and his son intended that the father would "retain some right and power to control the pickup." As to 3 and 4, the statements of the father were not consistent. As to 6, William's deposition indicated that he normally drove the car and paid for his gas and repairs.

The closest Washington case is *Kelly v. Aetna Cas. and Sur. Co.*, 100 Wash.2d 401, 670 P.2d 267 (1983) (en banc), another case involving liability under an umbrella policy which insured any person using an automobile owned by the insured with the insured's permission. The father in that case testified that it was his and his son's intent that the automobile belonged to the son; that the father made the purchase possible by taking the loan and that the son was to repay him for payments made on the loan; that the father was shown on the title as legal owner to give him security for the reimbursement; and that it was his understanding that his son would arrange insurance for the car although the son had not done so. *Id.* 670 P.2d at 269.

Unlike the present case, the son in *Kelly* was emancipated. As in the present case, the primary insurer of the father had accepted liability. The Supreme Court of Washington held that there was no coverage under the primary policy and that the car was not owned by the father. *Id.*

In *Kelly* the facts were strong enough to permit a ruling by the trial court that no coverage was provided by either the primary or the umbrella policy. In the present case the facts are not as clear, but it is evident that the father's testimony and the son's must be considered in reaching a conclusion and when there is divergence or a problem of credibility in such testimony, summary judgment is inappropriate. *Kelly* in fact dilutes the presumption that goes with legal registration when the auto in question is one bought for a family member. *Id.* 670 P.2d at 271. Consequently the presumption alone does not carry the day and the disputed factual question must be tried.

*Apportionment*

The rule is well established that if there are two policies of excess insurance and a literal construction of each policy would mean that neither would have to pay, the policies are mutually repugnant and a court will construe the contracts to require each insurer to pay its appropriate share. *Pacific Indemnity Co. v. Federated American Ins. Co.*, 76 Wash.2d 249, 456 P.2d 331, 332 (1969) (en banc), overruled on other grounds, *Mission Ins. Co. v. Allendale Mutual Ins. Co.*, 95 Wash.2d 464, 626 P.2d 505, 506–507 (1981) (en banc). Such is the case here.

Under Mission's "other insurance" clause, unless the other insurance is "specifically stated to be in excess of this policy," Mission does not contribute and Mission would pay only when the other insurance was exhausted. As the insurance under the Indiana policy is not specifically stated to be excess of Mission, Mission's contract provides that it should pay nothing in this case. Under Indiana's "other insurance" clause the insurance provided is excess to any other insurance whether it is stated to be primary or excess. Consequently, Indiana by contract is liable to pay nothing in this case.

Mission argues that there is a proviso in the Indiana contract which makes Indiana liable when "such other insurance provides indemnity only in excess of a stated amount of liability per occurrence." Mission contends that the insurance it issues fits this clause. But Indiana's provision is explicit in stating that Indiana is liable *only* if the other insurance is in excess of a stated amount of liability, and Mission's policy not only is in excess of the Safeco amount of $500,000, it is also in excess of any other excess insurance that the insured collects. Hence, the proviso in the Indiana policy does not apply. By contract Mission has provided that it will not be liable on the facts of this case and Indiana has provided that it will not be liable on the facts of this case. The clauses are repugnant to each other and must be construed to provide that each insurer is liable for equal shares of the excess.

REVERSED AND REMANDED.