OPINION OF THE COURT
Paula J. Omansky, J.
Plaintiffs move for summary judgment and declaratory relief against Empire Insurance Company (Empire) in order to *92 resolve a coverage dispute. The underlying action giving rise to the dispute involved an accident which occurred when Erica Pauling, driving a car rented from Snappy Car Rental, Inc. (Snappy), struck a pedestrian. Pauling was driving the rented vehicle because her own vehicle was being repaired. At the time she rented the vehicle on July 27, 1989, Pauling was insured by Empire under an automobile liability insurance policy. That policy provided coverage for Pauling while she was driving a "temporary substitute”, which was a vehicle other than her own when her own vehicle was undergoing repairs.
When Pauling rented the car from Snappy, she signed a car rental agreement, containing an Insurance Provision which read as follows: "This vehicle is not covered for bodily injury or property damage insurance by Snappy and coverage shall be provided by renter or renter’s existing insurance” (emphasis in the original). The provision under the heading "Personal Accident Insurance” read: "By initialing, renter agrees to purchase at the rate of $2.00 per day accident insurance as provided in the Certificate of Insurance furnished by lesser at the time of rental.” Pauling declined to purchase personal accident insurance, and initialed the line next to "Declines PAI”.
Progressive Casualty Insurance Company (Progressive) insures Snappy for liability resulting from its car rental operations. On this motion, Progressive argues that Empire, the insurer of Pauling, has the primary duty to defend in the underlying personal injury action commenced by David DeLeon, the injured pedestrian, against Snappy and Erica Pauling, claiming that its insurance of Snappy is secondary to Empire’s coverage of Pauling, and is excess coverage. Empire, on the other hand, argues that both policies — its policy covering Pauling, and Progressive’s policy insuring Snappy — provide primary coverage, and that as concurrent insurers, both bear a legal obligation to contribute to providing a defense and indemnification with respect to the underlying personal injury suit.
In support of its position that there is concurrent primary coverage, Empire relies on Utica Mut. Ins. Co. v Preferred Mut. Ins. Co. (180 AD2d 195 [3d Dept 1992]). In Utica the insurer of the driver of a borrowed car involved in an automobile accident claimed that the "temporary substitute” provision of the driver’s policy provided only excess or secondary coverage to the car owner’s coverage, which it maintained was *93 primary. The Utica Court disagreed, finding that the "temporary substitute” provision constituted primary coverage for the driver while in a borrowed vehicle, and that the two insurance policies covering the owner and the driver afforded concurrent primary coverage. Based on Utica, Empire maintains that the two policies at issue here, Empire’s coverage of Pauling, the driver, with its "temporary substitute” provision, and Progressive’s policy insuring Snappy in its car rental operations as the owner of the cars, provide concurrent coverage with both insurers providing primary coverage.
The conclusion in Utica of concurrent primary coverage of two insurers was based on a finding that both insurers provided coverage "for the same interest and against the same risk” (Utica Mut. Ins. Co. v Preferred Mut. Ins. Co., 180 AD2d 195, 198, supra). No such identity exists in this case. Progressive points to the "cutback endorsement” in its policy with Snappy reading in pertinent part: "It is hereby agreed that for the purpose of this policy and any subsequent renewals, the insurance provided by this policy for the lessee, rentee * * * is subject to the terms, including any limit of liability, conditions, restrictions, and limitations contained in the lease or rental agreement, providing our undertaking this policy is not enlarged or extended.”
The effect of the "cutback endorsement” is that Progressive did not provide insurance for the car rented by Pauling because by the terms of its policy with Snappy, Progressive’s coverage was limited by the terms of Pauling’s agreement with Snappy. Pauling had the option of having Snappy provide insurance coverage, but she specifically declined coverage by Snappy. Had Pauling agreed to purchase the insurance offered by Snappy, arguably there would have been concurrent primary insurance. Instead Pauling elected to rely on her own insurance, specifically acknowledging that the rental vehicle was "not covered for bodily injury or property damage insurance by Snappy.”
Progressive here is not claiming "no liability”, or that the cutback endorsement absolves it of all liability for the accident in which Pauling was involved, though construing its policy with Snappy in light of Snappy’s car rental agreement with its customer might support such an interpretation. By interpreting its insurance policy of Snappy as providing excess coverage, Progressive admits to coverage once the limits of Pauling’s policy with Empire have been reached, assuming DeLeon is successful in his suit against Pauling and Snappy. *94 Therefore, the court is not faced with the type of public policy issue which might arise if, based on the cutback endorsement, Progressive were disclaiming all coverage without regard to mínimums set by the financial responsibility laws (see, Davis v De Frank, 33 AD2d 236 [4th Dept], affd 27 NY2d 924 [1970]; General Acc. Fire & Life Assur. Corp. v Piazza, 4 NY2d 659 [1958]), or where the renter of the Snappy car falsely indicated that he or she had other car insurance (see, Davis v De Frank, 33 AD2d, supra, at 242 [4th Dept 1970]; Tom Sawyer Country Day School v Providence Washington Ins. Co., 108 AD2d 810, 811 [2d Dept 1985]).
Empire voices no objection to Progressive’s cutback endorsement as such, based on public policy or any other grounds. In the absence of public policy considerations, there is no reason not to give effect "to the parties’ private law as reflected in their binding contractual arrangement” (see, Federal Ins. Co. v Atlantic Natl. Ins. Co., 25 NY2d 71, 77 [1969]). Pauling agreed with Snappy that Snappy would not provide insurance for bodily injury or property damage, and that Pauling would rely on her policy with Empire. By virtue of the cutback endorsement, Progressive’s coverage of Snappy was limited by the terms of Snappy’s agreement with Pauling.
There being no issue of fact, plaintiffs’ motion for summary judgment and for judgment pursuant to CPLR 3001 is granted to the extent that Empire is declared the primary insurer in the underlying personal injury action commenced by David DeLeon; Progressive’s insurance policy is excess to that of Empire’s; Empire shall reimburse Progressive for its reasonable defense costs incurred in connection with the underlying personal injury action incurred on behalf of Snappy.