## Champlain Casualty Company v. Agency Rent-A-Car, Inc.

[716 A.2d 810]

No. 97-101

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 12, 1998

amended to remove the prohibition altogether. See 1937, No. 56, § 1. The lease from Chester to Holt was executed in 1947.

*Paul R. Bowles*, Montpelier, and *Steven A. Bredice*, Essex Junction, of *Hill, Unsworth, Barra & Bowles*, for Plaintiff-Appellant.

*John P. Cain* and *Lori Reuschel Choiniere* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.*, Burlington, for Defendant-Appellee.

**Dooley, J.** Plaintiff Champlain Casualty Company of Vermont appeals a Washington Superior Court order granting summary judgment to defendant Agency Rent-A-Car, in a dispute over liability for damages caused by the lessee of one of Agency's vehicles. Champlain is the lessee's insurer under a comprehensive automobile liability policy. The trial court held that Agency's self-insurance obligation, created to comply with Vermont's Motor Vehicle Financial Responsibility Law, 23 V.S.A. §§ 800-810, does not constitute "other collectible insurance" and consequently, Champlain is responsible for providing primary liability coverage. Champlain appeals. We affirm, but on grounds different from those employed by the trial court.

The facts of this case are largely undisputed. On November 9, 1993, Alex Roberts of Stowe, Vermont, rented a car from Agency and signed a rental contract. While driving the rented car, Roberts collided with a vehicle driven by Patricia Alley. Roberts died as a result of injuries he suffered in the crash. Alley was injured, and she and her husband later filed suit against Roberts and his estate.

The parties in the underlying suit looked to both Champlain and Agency to defend and indemnify. This led to the litigation before us, in which Champlain sought a declaratory judgment that Agency was obligated to defend and pay any claim against Roberts' estate. Agency responded that Champlain had the duty to defend and indemnify.

Champlain's responsibility is based on a comprehensive automobile liability insurance policy it issued to Roberts. The policy covered Roberts' operation of a nonowned automobile, but stated that:

> If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

Agency's responsibility is based on Vermont's financial responsibility law. No owner of an automobile may permit the operation of the vehicle upon the highways of the state without having in effect an automobile liability policy or bond, in the amount specified in the statute and covering persons killed or injured in an accident and property damage. See 23 V.S.A. § 800(a). In lieu thereof, the owner may file self-insurance in the amount of $100,000. See *id.* § 801(c). The Commissioner of Motor Vehicles may issue a self-insurance certificate to a person when the Commissioner is satisfied that the person has "at least $100,000.00 of unencumbered net worth." *Id.* The statute goes on to provide:

> A certificate of self-insurance obtained by a self-insurer shall insure every person operating a motor vehicle, owned by said self-insurer, with his express or implied permission, against loss within statutory limits from the liability imposed by law upon such person arising out of the operation of said motor vehicle and shall be for the benefit of any person suffering personal injuries or property damage arising out of the use of such motor vehicle with such express or implied permission.

*Id.*

Agency obtained a certificate of self-insurance from the Commissioner of Motor Vehicles. Agency does not offer insurance to those who rent cars from it. In fact, the rental agreement entered into between Roberts and Agency required that Roberts have his own liability insurance covering his operation of Agency's vehicle. The rental agreement provided that Roberts' "valid and collectible liability and personal injury protection insurance coverage maintained with Champlain shall be primary." The agreement explained that Agency was self-insured and provided:

> If required by the financial responsibility laws of the state in which this agreement was executed the company shall settle or defend, up to the minimum limits required for any one rental vehicle per occurrence, as it considers appropriate, any claim or suit for bodily injury and/or property damage arising out of the authorized use of this vehicle by the renter, renter's spouse or listed additional licensed driver. . . . These protections, if required, shall be excess over any self-insurance certificate, surety bond, financial responsibility bond, cash deposit, or insurance policy or benefit including but not limited to: health and accident, medical, dental insurance and/or disability benefit available to any individual making a claim under this agreement.

Champlain argues that the "other collectible insurance" clause contained in its policy with Roberts made Agency the primary insurer. Alternatively, it argues that both it and Agency should be treated as excess carriers, and the loss should be apportioned between them. Meanwhile, Agency argues that its self-insurance status is not "other collectible insurance," and, as a result, Champlain is responsible for primary coverage. Alternatively, it argues that even if the "other collectible insurance" clause applies, the nature of its relationship with Roberts is such that its liability should be secondary. The trial court agreed with Agency's first argument holding that self-insurance is not insurance for purposes of Champlain's "other collectible insurance" clause. Thus, the court determined that Champlain was the primary insurance provider, requiring Champlain to defend and indemnify the estate of Alex Roberts up to its policy limits, before Agency is required to indemnify under the financial responsibility laws.

Both parties have framed the issue in this case as whether self-insurance is "other collectible insurance." As the briefing reflects, other jurisdictions are split on this issue. Compare *White v. Howard*, 573 A.2d 513, 514 (N.J. Super. 1990) (self-insurance by rental agency was same as an insurance policy covering vehicle); *Hartford Casualty Ins. Co. v. Budget Rent-A-Car Systems*, 796 S.W.2d 763, 769 (Tex. Ct. App. 1990) (self-insurance program constituted other valid and available insurance); *Hillegass v. Landwehr*, 499 N.W.2d 652, 656 (Wis. 1993) (self-insurer provided insurance under other insurance clause in the driver's policy); with *Quick v. National Auto Credit*, 65 F.3d 741, 743 (8th Cir. 1995) (qualification as self-insurer under state financial responsibility law did not constitute other valid and collectible

insurance); *Farmers Ins. Co. v. Snappy Car Rental, Inc.*, 876 P.2d 833, 837 (Or. Ct. App. 1994) (certificate of self-insurance does not constitute other valid and collectible insurance); *Home Indemnity Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 866 (Tex. Civ. App. 1958) (certificate of self-insurance does not constitute other collectible insurance). The arguments of the parties tend to paint with a broad brush, suggesting that self-insurance is a form of insurance, see *Hillegass*, 499 N.W.2d at 655 (self-insurance is just a form of insurance), or alternatively, the antithesis of insurance, see *State v. Continental Cas. Co.*, 879 P.2d 1111, 1116 (Idaho 1994) (because self-insurance does not involve a transfer of the risk of loss, it is not insurance). These labels are generally unhelpful because we are dealing with a situation where the self-insurer has some obligation to pay for the consequences of another person's negligence, here the lessee of the car, and is not directly liable. Thus, the question is whether the relationship between the self-insurer and the tortfeasor can be described as insurance. Viewed from this perspective, there is far less disagreement in the cases than a superficial perusal would suggest.

The Texas cases provide good examples of relevant factors. *Home Indemnity* is perhaps the leading case for the proposition that self-insurance is not insurance for purposes of an "other collectible insurance" clause. See 314 S.W.2d at 865. In that case, the defendant was an employer and the tortfeasor was an employee who was driving a company-owned vehicle, but on personal business. Texas financial responsibility laws required certain vehicle owners to provide financial responsibility by insurance or, in certain circumstances, by a certificate of self-insurance. Defendant had such a certificate which obligated it to "pay the same judgments and in the same amounts that an insurer would have been obligated to pay." *Id.* at 864. The court noted, however, that this obligation did not equal the obligation of an insurer under the standard Texas automobile liability policy. The court found this distinction determinative:

> A Standard policy calls for the assumption of many obligations other than the payment of a judgment rendered against the insured — among which, and probably the most important, is to indemnify the insured against loss, even as against his own negligence. The guarantee by a self-insurer to pay any judgment that an insurance carrier would have to pay can operate only for the benefit of the State of Texas and the injured party and cannot in any sense of the word be

> construed to operate for the benefit of the negligent driver (even though he be an employee), and deprive the self-insurer of his right to judgment over against him. And, in the event of a judgment over against the negligent driver, [plaintiff's policy] would operate to indemnify the negligent driver against such loss, for indemnification against loss to the insured is precisely what the policy contract of [plaintiff] has provided it will do.

*Id.* at 866.

The court in *Home Indemnity* found that the critical relationship was that between the self-insurer and the tortfeasor because the self-insurer was not independently liable and its obligation arose solely from the financial responsibility laws. For two reasons, it found that this relationship was not one of insurance: (1) the self-insurer was not obligated to indemnify the tortfeasor because it could recover from the tortfeasor any damages it paid the injured party; and (2) the self-insurer's obligation did not operate for the benefit of the tortfeasor. See *id.* at 865-66.

The *Hartford Casualty* case is more similar to the one here in the sense that the defendant was a rental car company and the tortfeasor was a lessee of one of its cars. See 796 S.W.2d at 765. Under the rental car contract, defendant, a self-insurer, provided automobile liability coverage under the standard provisions of the basic Texas automobile liability insurance policy. It also provided that such coverage would be used before any other insurance available to the lessee. Relying on these provisions, the court distinguished *Home Indemnity*. See *id.* at 767-68. The contract provided "coverage" to the lessee, and, therefore, the defendant was obligated to indemnify the lessor. See *id.* at 768. It clearly operated for the benefit of the negligent driver. The rental agreement did not allow defendant to recover from the lessee. It also provided that its coverage was primary. Thus, the court found that defendant's obligation was in substance insurance. See *id.* at 769.

For a variety of reasons, the instant case is far closer to *Hartford Casualty* than to *Home Indemnity*. The combination of the obligations under the Vermont Financial Responsibility Act and the rental car contract negates the characteristics *Home Indemnity* found critical and has most of the characteristics found critical in *Hartford Casualty*. Under 23 V.S.A. § 801(c), the central obligation of the self-insurer is to "*insure* every person operating a motor vehicle, owned by said self-insurer, with his express or implied permission, against loss within statutory limits from the liability imposed by law

upon such person arising out of the operation of said motor vehicle . . . ." (Emphasis supplied.) The statute provides a relationship between the self-insurer and the tortfeasor and describes it as insurance against the tortfeasor's loss. It describes an obligation to indemnify. Although the rental car contract requires the tortfeasor to indemnify Agency for any payments above the financial responsibility minimum, as well as for any payments Agency is not required to make, it does not provide that Agency may recover from the tortfeasor any damages it pays the injured party. Unlike *Hartford Casualty*, Agency's obligation in this case is described as excess over the tortfeasor's insurance, but that difference does not go to whether Agency has an insurance relationship with the tortfeasor. Instead, it goes to the consequences of that relationship.

■ Insurance is defined as a "contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils." Black's Law Dictionary 721 (5th ed. 1979). The rental car contract between Agency and Alex Roberts, along with the obligation established by 23 V.S.A. § 801(c), creates exactly this relationship. See *Grand Rent A Car Corp. v. 20th Century Ins. Co.*, 31 Cal. Rptr. 2d 88, 93-94 (Ct. App. 1994); *Allstate Ins. Co. v. Elassal*, 512 N.W.2d 856, 859 (Mich. Ct. App. 1994); see also *Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.*, 234 S.E.2d 870, 872 (S.C. 1977) (where statutory obligation of self-insurer is to provide same protection to one operating self-insurer's vehicle with consent as a statutory liability policy must provide, self-insurer is providing "insurance" within meaning of operator's policy). Thus, we conclude that the relationship between Agency and the lessee of the vehicle, Alex Roberts, was in substance one of insurance. Agency's obligation to pay under the financial responsibility law is "other collectible insurance" for purposes of Champlain's policy.

This conclusion does not, however, end this case. We are left with two insurance obligations, which are described as excess of other coverage which is primary. Since both such contractual terms cannot be enforced, we must decide the consequences of the conflict. This is an issue of first impression in Vermont.

In looking at the cases from other jurisdictions, we find a number of approaches to resolving this conflict. The majority rule is that conflicting excess "other insurance" clauses are mutually repugnant, and each is void. The result of that rule is to prorate the loss between

insurers in accordance with the jurisdiction's method of proration.[1] See *Indiana Ins. Co. v. Mission Nat'l Ins. Co.*, 874 F.2d 631, 634 (9th Cir. 1989) (where construction of two excess insurance clauses would mean neither insurer would pay, policies are mutually repugnant and each insurer must pay proportionate share of liability, applying Washington law); *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 764 P.2d 1191, 1199-1200 (Colo. 1988) (excess insurance clauses were mutually repugnant, and insurers must apportion loss); *Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.*, 508 N.W.2d 634, 637-38 (Iowa 1993) (insurance policies contained mutually repugnant excess clauses, and thus each insurer was obligated to pay prorated share of cost of settlement).

There are other methods. For example, the Minnesota courts use a closeness-to-the-risk analysis to determine which excess insurance policy should be primary. Under this analysis, the courts consider which policy describes the accident-causing instrumentality, which premium reflects the greater exposure, and which policy insures the primary risk. See *Federal Ins. Co. v. Prestemon*, 153 N.W.2d 429, 436 (Minn. 1967). In *State Farm Mutual Automobile Insurance Co. v. Budget Rent-A-Car Systems, Inc.*, 359 N.W.2d 673, 676 (Minn. Ct. App. 1984), the Minnesota Court of Appeals applied this analysis to a rental car case and held that the insurance company for the lessor was primarily liable because it insured the vehicle involved in the accident, and its policy was written to cover business losses.[2]

Other courts have held that when an insured is driving a vehicle he does not own, and the owner's insurance policy provides liability coverage, the owner's policy will be considered primary over that of the driver, even if both policies contain excess "other insurance" clauses. In simplistic terms, the automobile insurance "follows the automobile, rather than the driver," and thus the owner's policy is

---

[1] If the policies provide for a method of apportioning loss, we will honor that method. See *American Fidelity Co. v. North British & Mercantile Ins. Co.*, 124 Vt. 271, 276, 204 A.2d 110, 114 (1964); *Enosburg Falls v. Hartford Steam Boiler Inspection Co.*, 117 Vt. 114, 120, 85 A.2d 577, 581 (1952). If no contractual method exists, a number of alternatives may be employed. See generally Annotation, *Apportionment of Liability Between Liability Insurers Each of Whose Policies Provides That It Shall Be "Excess" Insurance*, 69 A.L.R.2d 1122 (1960 & Supp. 1995). Because of our disposition, we need not decide which apportionment method we would employ.

[2] In *State Farm*, the lessor Budget Rent-A-Car Systems, Inc., was self-insured for the first $100,000 of its liability and had an insurance policy for the remainder up to $1,000,000. The court held that Budget had primary responsibility for the first $100,000 of liability because "[t]o treat Budget as anything other than an insurer for the first $100,000 would create a windfall for Budget." 359 N.W.2d at 676.

primary. *Allstate Ins. Co. v. State Auto. Mut. Ins. Co.*, 364 S.E.2d 30, 33 (W. Va. 1987) ("simple, bright-line rule of law that the primary obligation to defend and indemnify follows the automobile, rather than the driver, facilitates an orderly determination of priorities among carriers insuring the same risk"); see generally D. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance*, 22 Pepp. L. Rev. 1373, 1391 (1995). Most of the courts that have adopted this approach have done so because they found no real conflict between the excess clauses in the circumstances before the court. See *Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 638 A.2d 1220, 1224-25 (Md. Ct. Spec. App. 1994).[3]

We need not choose a general rule to resolve excess coverage conflicts in this case because the unique characteristics of the situation before us would take it out of any general rule. As set out above, Agency's responsibility to insure was created by the compulsory insurance provision of Vermont's financial responsibility law. Also as set out above, Agency took numerous steps to make its obligation secondary to any other insurance obligation. Agency offered no insurance coverage to its lessees. Its general rental contract language said that its obligation "shall be excess" over any other available insurance. The rental contract said in bold language on the front: "INSURANCE COVERAGE TO BE PROVIDED BY RENTER'S INSURANCE." It had a section to specify the lessee's insurance company, which Roberts completed in this case so it read:

> THE RENTER AGREES THAT HIS VALID & COL-
> LECTIBLE LIABILITY AND PERSONAL INJURY
> PROTECTION INSURANCE COVERAGE MANDATED
> WITH Champlain Casualty Co. SHALL BE PRIMARY.
> SUCH INSURANCE SHALL BE PRIMARY FOR THE
> LIMITS OF LIABILITY & PERSONAL PROTECTION

---

[3] The false conflict arises because both the vehicle owner's policy and the vehicle operator's policy provide excess coverage only if the operator is driving a nonowned vehicle. Since the vehicle is owned by the insured under the owner's policy, the excess coverage provision of that policy does not apply even though the operator is not the owner of the vehicle. Thus, the vehicle owner's policy provides primary coverage, and the vehicle operator's policy provides excess coverage. See *Universal Underwriters Ins. Co.*, 638 A.2d at 1224; *Aetna Cas. & Sur. Co. v. CNA Ins. Co.*, 606 A.2d 990, 993-94 (Conn. 1992).

COVERAGE AS REQUIRED BY SECTION 627.7263 FLA. STAT.[4]

The sole consequence of this dispute is to determine the priority of payments under the insurance obligations of the parties. Our decision will affect neither the amount of recovery of the injured party and her spouse, nor the obligations of the estate of the tortfeasor. Indeed, depending upon the size of any judgment or settlement obtained by the injured party and her spouse, our decision in this case may not even determine the ultimate financial exposure of the parties to this litigation.

We conclude under these circumstances that Champlain is primarily liable. This is not a case of conflict between general excess coverage clauses. Here, the contract between Agency and its lessee specifically requires the lessee to obtain or maintain insurance and requires that insurance to impose the primary responsibility to indemnify.

We are also influenced by the fact that Agency's responsibility is one imposed by law; its contractual responsibility is to comply with

---

[4] Florida has answered the question before us by statute. Fla. Stat. Ann. § 627.7263 (West 1996). The statute provides:

**§ 627.7263. Rental and leasing driver's insurance to be primary; exception**

(1) The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease is primary unless otherwise stated in at least 10-point type on the face of the rental or lease agreement. Such insurance is primary for the limits of liability and personal injury protection coverage as required by §§ 324.021(7) and 627.736.

(2) If the lessee's coverage is to be primary, the rental or lease agreement must contain the following language, in at least 10-point type: "The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by §§ 324.021(7) and 627.736, Florida Statutes."

The rental car contract in this case contained the disclosure mandated by an earlier version of § 627.7263(2).

Although the Florida statute does not apply to an automobile lease entered into in Vermont, we have reached a conclusion that is consistent with it in this case, relying in part on Florida decisions issued before the statute came into effect. See *Hartford Accident & Indemnity Co. v. Lauderdale Rent-A-Car, Inc.*, 351 So. 2d 362, 363 (Fla. Dist. Ct. App. 1977); *National Indemnity Co. v. Home Ins. Co.*, 345 So. 2d 1077, 1078-79 (Fla. Dist. Ct. App. 1977). Other states have recognized that the rental car situation creates special problems in light of the financial responsibility laws and adopted insurance priority rules for rental car accidents. See *Jones v. Wortham*, 411 S.E.2d 716, 718 (Ga. Ct. App. 1991).

the requirements of the law and no more. Nothing in our financial responsibility and compulsory insurance laws requires that the insurance requirements imposed be primary with respect to other available insurance. Because the purpose of our financial responsibility and compulsory insurance laws is to protect the public, see *Wright v. Malloy*, 373 F. Supp. 1011, 1016 (D. Vt. 1974); 12A G. Couch, Couch on Insurance § 45:723, at 365 (2d. ed. 1981), nothing in the policies behind those laws governs how payments are allocated among insurers. See *Kaneshiro v. Alamo Rent-A-Car, Inc.*, 909 F. Supp. 752, 758 (D. Haw. 1996); *Western Casualty & Surety Co. v. Universal Underwriters Ins. Co.*, 657 P.2d 576, 579 (Kan. 1983); *Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co.*, 147 A.2d 529, 534 (N.J. 1959). Thus, the minimum obligation imposed on Agency is discharged by insurance or self-insurance that is excess with respect to other liability insurance.[5]

We cannot give effect to both the excess coverage clause in Champlain's policy and the various clauses making Champlain's coverage primary, as contained in Agency's rental contract. For the above reasons, we hold in these circumstances that "[w]here the lease specifically requires that the lessee obtain his own insurance, the lessee's policy is primary."[6] 16 G. Couch, Couch on Insurance § 62:63, at 518 (2d ed. 1983); see *Kaneshiro*, 909 F. Supp. at 753; *Hartford Accident & Indemnity Co. v. Lauderdale Rent-A-Car, Inc.*, 351 So. 2d 362, 363 (Fla. Dist. Ct. App. 1977); *National Indemnity Co. v. Home Ins. Co.*, 345 So. 2d 1077, 1078-79 (Fla. Dist. Ct. App. 1977); *Progressive Casualty Ins. Co. v. Empire Ins. Co.*, 616 N.Y.S.2d 136, 138 (Sup. Ct. 1994).

■ Although Agency's self-insurance obligations under our financial responsibility and compulsory insurance laws, and its rental car contract, are "other collectible insurance" as provided in Champlain's

---

[5] We recognize the contrary decision of the Michigan Supreme Court in *State Farm Mutual Automobile Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 349-50 (Mich. 1996), interpreting the requirements of the Michigan no-fault insurance act. The court found "the no-fault act requires car owners to be primarily responsible for insurance coverage on their vehicles." *Id.* at 349. We find no similar requirement in our compulsory insurance and financial responsibility laws.

[6] We are not holding that the lease contract between Agency and its lessee can bind Champlain. See *Enterprise Leasing Co.*, 549 N.W.2d at 350. The outcome of this case cannot be determined by contract law because the governing contractual provisions conflict. Instead, we are attempting to resolve the conflict with a practical decision that is most consistent with the expectations of the parties and the lessee-tortfeasor.

insurance policy, we agree with the trial court that Champlain has the primary obligation to indemnify in this case.

*Affirmed.*