Marjorie BLEVIO, Administratrix of the Estate of Noah W. Blevio, Plaintiff–Appellee,

v.

AETNA CASUALTY & SURETY COMPANY, et al., Defendants–Appellants.

No. 94–1318.

United States Court of Appeals, First Circuit.

Argued May 2, 1994.

Decided Oct. 20, 1994.

Kevin Truland, with whom Gallagher & Gallagher, P.C., Boston, MA, was on brief for appellants.

Doris R. MacKenzie Ehrens, with whom Richard W. Murphy and Murphy, Lamere & Murphy, P.C., Braintree, MA, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

Ms. Marjorie Blevio ("Blevio") brought a declaratory judgment action, as administratrix of the estate of her thirteen-year-old son Noah Blevio, against Aetna Casualty & Surety Company ("Aetna") and Royal Insurance Company of America, Inc. ("Royal"), to determine the rights and liabilities of the parties under two motor vehicle underinsurance policies. The parties filed cross-motions for summary judgment. The disposition of these motions turned on the issue of whether, under the law of Connecticut, two insurers, who each provide underinsured motorist coverage to a party injured in an accident, can each set off in full, from the limits of their coverage, the amount of the recovery obtained from the party legally responsible for the accident. The district court found that each insurer was not entitled to set off the recovery from the tortfeasor in full, but rather that the two insurers could only deduct the amount of the recovery from the aggregated underinsured motorist coverage limits. 844 F.Supp. 849. For the following reasons, we affirm.

## I. BACKGROUND

### A. Facts

The parties do not dispute the material facts of this case. Noah Blevio died on August 9, 1991, from fatal injuries sustained when he was hit by a pickup truck on June 30, 1991. The combined limits of the tortfeasors' applicable bodily injury liability policies totalled $200,000. This amount was offered to Blevio.

In addition, Noah Blevio had underinsured motorist coverage up to $500,000 under his father's Aetna business policy and up to $300,000 under his brother's Royal policy. Both policies provided that their underinsured motorist coverage shall be reduced by the amounts paid by, or on behalf of, the legally responsible party. Specifically, the uninsured motorist coverage endorsement of the Aetna Policy provides:

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle" [1] ...

D. Limit of Insurance

\* \* \* \* \* \*

2. Any amount payable under this coverage shall be reduced by:

\* \* \* \* \* \*

b. All sums paid by or for anyone who is legally responsible....

The uninsured motorist coverage provisions of the Royal policy provide:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury,"

1. Sustained by an "insured," and

2. Caused by an accident....

In addition, the endorsement attached to the Royal policy, entitled "Amendment of Policy Provisions—Connecticut," provides:

II. Uninsured Motorists Coverage [2]

Part C is amended as follows:

\* \* \* \* \* \*

E. The Limit of Liability provision is replaced by the following:

Limit of Liability

\* \* \* \* \* \*

The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible....

The parties do not dispute that the legally responsible parties were underinsured and that the underinsured motorist coverage provided under Aetna's and Royal's policies are applicable to Blevio's claims. Nor do the parties dispute that Aetna and Royal are entitled to a setoff by virtue of the existence of the legally responsible parties' liability payment. Rather, the only issue is the extent to which liability insurance payments made on the tortfeasor's behalf can be set off. Blevio contends that Aetna and Royal can only share one $200,000 setoff equal to the amount that Blevio will actually collect from the tortfeasors. Both Aetna and Royal claim, however, that they are each entitled to deduct the tortfeasors' $200,000 liability payment in order to give full effect to their separate underinsurance setoff provisions, thereby reducing the aggregate underinsurance coverage available to Blevio from $800,000 to $400,000.[3]

**B. Procedural History**

Blevio filed a declaratory judgment action on June 11, 1993, asking that the district court determine the extent to which Aetna and Royal are entitled to set off the limits of the available bodily injury liability coverage from the underinsured motorist coverage of their respective policies. Blevio then filed a "Motion for Judgment on the Pleadings or for Summary Judgment." Aetna and Royal cross-moved for summary judgment.

After a hearing, the district court entered judgment for Blevio. The district court advised Aetna and Royal, however, that because, at the time, no Connecticut appellate court had directly addressed the issue, and a split of authority existed between two Connecticut Superior Court decisions that had addressed the issue, it would certify the issue presented to the Supreme Court of Connecticut upon their request. Aetna and Royal then filed an "Ex Parte Motion for Certifica-

---

1. The Aetna policy defines an "uninsured motor vehicle" as a motor vehicle that is underinsured, in that "the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged but that sum is less than the Limit of Insurance of this coverage."

2. The Royal policy defines "uninsured motor vehicle" as a motor vehicle "[f]or which the sum of the limits of liability under all bodily injury liabil-ity bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage applicable to each vehicle insured for this coverage under this policy."

3. Pursuant to the terms of the insurance contracts, the issue of whether Blevio is legally entitled to recover, and if so, the amount of damages, are subject to arbitration. Arbitration has not yet commenced, but will take place after a final decision in this case.

tion of Question of Law." The district court vacated the judgment in favor of Blevio, and allowed certification to the Supreme Court of Connecticut. The Supreme Court of Connecticut declined the certification request. On February 24, 1994, the district court then entered final judgment in favor of Blevio and against Aetna and Royal. Aetna and Royal now appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Our review of the district court's grant of summary judgment is plenary. *Alan Corp. v. International Surplus Lines Ins. Co.*, 22 F.3d 339, 341 (1st Cir.1994). Where, as here, the parties do not dispute the facts upon which coverage is allowed or denied under an insurance policy, and the existence or amount of coverage depends solely upon a construction of the policy, a question of law is presented. *Id.* at 342 (citing *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir.1984)). Therefore, like other questions of law, we are not bound by the district court's interpretation of the policy. *Alan Corp.*, 22 F.3d at 342.

The parties do not dispute that Connecticut law applies. In interpreting Connecticut law, we are bound by intermediate appellate state court decisions construing state law unless we are convinced that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1275 (1st Cir.1990); *see Cola v. Reardon*, 787 F.2d 681, 688 n. 5 (1st Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986) (stating that the First Circuit was bound to apply a state appellate court's statement of local law). We note that since the district court issued its decision in the present case, the Connecticut Court of Appeals has released a decision, *Allstate Ins. Co. v. Link*, 35 Conn. App. 338, 645 A.2d 1052 (1994), that resolves the question involved in this appeal. Be-

cause we have no reason to believe that the Connecticut Supreme Court would not reach a similar result, we are bound to apply this decision.[4]

## III. ANALYSIS

Connecticut law requires that each automobile liability insurance policy provide uninsured motorist coverage for the protection of persons insured thereunder against operators of uninsured and underinsured motor vehicles.[5] *See* Conn.Gen.St. § 38a–336(a). The statute requires that each policy provide a minimum level of uninsured/underinsured motorist protection, but also prevents an insured from obtaining a double recovery of damages. *See Buell v. American Universal Ins. Co.*, 224 Conn. 766, 621 A.2d 262, 266–67 (1993).

> An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

Conn.Gen.St. § 38a–336(b). Correspondingly, the insurance commissioner has adopted a regulation that provides, in pertinent part, that an insurance policy "may provide for the reduction of limits [of underinsured motorist liability] to the extent that damages have been ... paid by or on behalf of any person responsible for the injury...." Conn.Agencies Regs. § 38a–334–6(d)(1). The Aetna and Royal policies' underinsured motorist coverage provisions contain language that essentially track the Connecticut law, and provide that their policies' liability limits shall be reduced by any sum paid by, or for, anyone who is legally responsible.

---

4. On September 20, 1994, the Connecticut Supreme Court denied Allstate Insurance's petition for certification to appeal from *Allstate Ins. Co. v. Link*, 35 Conn.App. 338, 645 A.2d 1052 (1994).

5. Statutory provisions applying to uninsured motorist coverage apply equally to underinsured motorist coverage. *Covenant Ins. Co. v. Coon*, 220 Conn. 30, 594 A.2d 977, 978 n. 3 (1991).

4

As noted above, the Connecticut Court of Appeals has recently construed Conn.Agencies Regs. § 38(a)–334–6(d)(1), and addressed the situation of setoffs in the context of multiple underinsured motorist coverage in *Allstate Ins. Co. v. Link*, 35 Conn.App. 338, 645 A.2d 1052 (1994). The Court of Appeals held that multiple insurers providing underinsured motorist coverage to an insured cannot each setoff in full the amount of the recovery from the tortfeasor. *Id.* 645 A.2d at 1058. In *Allstate Ins. Co.*, Link was injured when the automobile she was driving was struck by a vehicle operated by a tortfeasor. *Id.* at 1054. The tortfeasor's insurance company paid $100,000 to Link, exhausting the limits of the tortfeasor's bodily injury liability coverage. *Id.* At the time of the accident, Link held two separate automobile insurance policies with Allstate. *Id.* One policy provided for $200,000 of uninsured/underinsured motorist coverage, and the other policy provided for $400,000 of such coverage. *Id.* Link claimed underinsured motorist benefits under both policies. *Id.* After arbitration, the Connecticut Superior Court found that the tortfeasor was underinsured, and that Link was entitled to underinsured motorist benefits from each of the two policies. *Id.* The court determined that the amount of available underinsured motorist coverage was $600,000, but that each policy should have deducted from its cumulative limit the sum of $100,000 previously paid by the tortfeasor. *Id.* at 1054–55. Link appealed, claiming that the court improperly reduced the amount of underinsured motorist benefits awarded to her by crediting Allstate with twice the amount actually paid out by the tortfeasor, thus creating a windfall to Allstate and depriving Link of a payment of $100,000 due her that she did not receive. *Id.* at 1057.

The Connecticut Court of Appeals agreed and found that Link was entitled to have available a total of $600,000 in underinsured motorist benefits under the two Allstate poli-

cies. *Id.* at 1057–58. While noting that no Connecticut Supreme Court case had specifically addressed this issue, the Court of Appeals stated that some related cases had implied that a tortfeasor's contribution should be shared among the policies covering the insured. *Id.* at 1057. The court stated:

> The amount of damages paid by the tortfeasor may reduce the total amount of underinsured motorist benefits available to a claimant. It may not reduce the amounts paid out by each policy. To hold otherwise would mean that an award due an insured is reduced unfairly by twice the amount actually paid out by or on behalf of the tortfeasor and that an insured is entitled to double the tortfeasor's credit merely by issuing separate policies. Such a result would be unfairly detrimental to the insured.

*Id.* at 1058. The court then concluded that from the $600,000 total, Allstate should have been credited with only the $100,000 actually paid by the tortfeasor. *Id.*

A similar result is mandated here. Blevio was entitled to an aggregate of up to $800,000 of underinsured motorist benefits under the two policies—up to $500,000 from the Aetna policy and up to $300,000 under the Royal policy. Because the tortfeasor effectively contributed $200,000, Aetna and Royal are entitled to reduce the total amount of underinsured benefits available to Blevio, $800,000, to $600,000 of available benefits. The two insurers must allocate the $200,000 deduction between them fairly, sharing the loss pro rata to the extent of their coverage.[6]

For the foregoing reasons, the judgment of the district court is *affirmed.*

---

6. The parties do not challenge the district court's determination that both Aetna and Royal should be considered "primary" insurers in the context of this appeal, and that if this Court upholds the district court's determination that Aetna and Royal are required to allocate the deduction be-

tween them, they should share the loss pro rata to the extent of their coverage (i.e., Aetna with $500,000 coverage may take ⅝ or $125,000 of the setoff, and Royal with $300,000 coverage may take ⅜ or $75,000).