Dartmouth Hitchcock v. U.S. Life Ins. CV-99-588-M    12/31/01
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Dartmouth Hitchcock Clinic, and
Hitchcock Clinic, Inc.,
     Plaintiffs

     v.                                  Civil No. 99-588-M
                                         Opinion No. 2001 DNH 232
United States Life Insurance
Company in the City of New York,
     Defendant


**O R D E R**


In general terms, this dispute concerned whether a three-year "rate guarantee" implicitly nullified an insurance policy's termination provision, effectively divesting the insurer of the right to cancel the policy within the period covered by the rate guarantee.  The court held that it did not and plaintiffs have moved for reconsideration of that order.


The details of the somewhat complex relationship between the parties is discussed more fully in the court's order of September 19, 2001.  For purposes of this order, it is sufficient to note that there are essentially two levels of contractual relations at issue.  At the top level, U.S. Life issued an insurance policy to

the University Physicians Trust (the "Trust") that generally describes the insurance benefits and options available, and sets out general provisions, exclusions, and means by which coverage may be terminated.[1]

At the second level, employers interested in providing benefits under the policy to their employees entered into an agreement with the settlor of the Trust, entitling them to participate in the Trust and apply for benefits offered under the policy. Each such participating employer was then offered a discrete "plan," which was specifically tailored to that employer's unique needs and which described in greater detail the precise contours of the coverage afforded, as well as the premium to be charged for that particular level of coverage.

---

[1] Plaintiffs correctly note that the court's order of September 19, 2001, speaks only to a single insurance policy when, in fact, two policies are at issue. The court neglected to make that point in its original order, having inadvertently omitted a footnote that addressed the issue. As plaintiffs necessarily concede, however, "[b]oth policies have identical termination language." Plaintiffs' memorandum (document no. 39) at 2, n.2. Consequently, the court's omission of that discussion from its earlier order has no bearing on its reasoning or its decision to grant defendant's motion for summary judgment. For ease of discussion, the court will occasionally to refer to a single policy of insurance.

In December of 1997, plaintiffs were offered (and accepted) three-year rate guarantees under their respective plans, effective January 1, 1998, through December 31, 2000. Plaintiffs' plans were amended to reflect those guaranteed rates. The terms of the overriding insurance policy that was issued to the Trust (in particular, the termination provisions) were not, however, amended. Effecting a policy amendment would have required substantially more formality than that associated with amending the plans.

Subsequently, plaintiffs were notified that U.S. Life intended to cancel the overriding policy of insurance, effective July 1, 1999. That date was later extended to July 1, 2000 (i.e., six months prior to the end of the rate guarantees under the plans). Plaintiffs objected, arguing that the rate guarantees and amendments to their individual plans effectively precluded U.S. Life from exercising its right to cancel the overriding policy. The court disagreed and, in granting U.S. Life's motion for summary judgment, concluded:

> Group policy G-128,105, issued to the Trustees of the University Physician's Trust, unambiguously reserves to defendant U.S. Life the right to cancel the policy, in

3

> good faith, on any anniversary date, notwithstanding
> the extension of rate guarantees to plaintiffs under
> plan documents.  U.S. Life thus acted within its
> contractual rights, as a matter of law, when it
> cancelled the policy, with appropriate advance notice,
> on July 1, 2000.

Dartmouth Hitchcock Clinic v. U.S. Life Ins. Co., No. 99-588-M

(D.N.H. Sept. 19, 2001) (the "September Order").

Pursuant to Rule 59(e) of the Federal Rules of Civil

Procedure and Local Rule 7.2(e), plaintiffs now move the court to

reconsider that holding and advance several arguments in support

of their view that the court erred in granting defendant's motion

for summary judgment.  None has merit.

## Standard of Review

A party moving for reconsideration under Rule 59 must base

its motion on newly discovered evidence or manifest errors of

law.  See Landrau-Romero v. Banco Popular de Puerto Rico, 212

F.3d 607, 612 (1st Cir. 2000).  "It is well settled, however,

that new legal arguments or evidence may not be presented via

Rule 59(e)."  Id.  Consequently, arguments not advanced in

opposition to summary judgment and evidence that was available,

4

but not properly submitted, cannot be presented in support of a motion to reconsider under Rule 59. As Judge Selya, writing for the court of appeals, colorfully observed:

> Unlike the Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence, withholds potentially relevant information, allows his opponent to configure the summary judgment record, and acquiesces in a particular choice of law does so at his peril.

Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994).


**Discussion**

I. Choice of Law.

In their motion to reconsider, plaintiffs first complain that the court erred in applying Rhode Island law when resolving the parties' dispute. Specifically, plaintiffs say, "While the Court applied Rhode Island law, Hitchcock argues that given conflict of law analysis, Rhode Island has no material connection to this matter and thus the Court should apply New Hampshire law." Plaintiffs' memorandum (document no. 39) at 3, n.4.

As with many of the arguments advanced in plaintiffs' motion to reconsider, this is the first time that surprising point has

5

been raised. It is surprising because, in their opposition to defendant's motion for summary judgment, plaintiffs urged the contrary point – that Rhode Island law did apply to the parties' dispute. See Plaintiffs' memorandum in opposition to summary judgment (document no. 18) at 8 ("Since this action is based on federal diversity, this Court may apply state-law remedies and law to the case. The Policy states that Rhode Island law applies."). Plaintiffs then went on to cite and rely upon several Rhode Island decisions to support their various arguments and, importantly, never even hinted that their dispute might be governed by New Hampshire law. See, e.g., id., at 11 (citing Rhode Island cases on agency law); 16 ("Rhode Island courts, however, have refused to interpret policy provisions or statutory language so as to render clauses meaningless."); 17 ("Assuming ambiguity exists, under Rhode Island law, this Court must strictly construe the policy in favor of Hitchcock and against the Defendant.").

Given the position advanced in their opposition to summary judgment, plaintiffs' current assertion that Rhode Island "has no material connection to this matter" and their complaint that the

6

court erred by failing to apply New Hampshire law, are neither persuasive nor valid. Having received a ruling with which they plainly disagree, plaintiffs cannot, in the context of a Rule 59 motion, invent a choice of law issue that is directly at odds with the position they advocated on summary judgment as a means to revisit that ruling.

II. <u>Available Evidence Not Presented at Summary Judgment</u>.

Next, plaintiffs suggest that the timing of the court's ruling on defendant's motion for summary judgment was unfair to them, and somehow denied them the opportunity to present relevant evidence. Specifically, plaintiffs assert that the court's September Order,

> which was issued less than two weeks prior to trial and after Hitchcock had spent considerable time and energy on trial preparation, is inequitable <u>without affording Hitchcock the opportunity to present the evidence that it was prepared to present at trial</u>.

Plaintiffs' memorandum at 4 (emphasis supplied). Plaintiffs repeat that refrain throughout their memorandum. <u>See, e.g.</u>, <u>id.</u>, at 6 ("Hitchcock was prepared to offer this evidence to the Court at trial."); <u>id.</u>, at 8 ("In this case, Hitchcock was prepared to

present evidence of the Defendant's bad faith at trial and thus at a minimum there are genuine issues of material fact as to whether the Defendant breached the implied covenant of good faith and fair dealing.").

That plaintiffs say they were poised and "prepared to offer evidence at trial" in support of their various claims hardly excuses their failure to present that evidence in opposition to defendant's then-pending motion for summary judgment. Even if plaintiffs had not discovered such evidence until after they filed their objection to summary judgment, they were certainly free to supplement that objection with the relevant (they believe critical) "newly discovered" evidence. They failed to do so and, as noted above, a motion for reconsideration is not an appropriate means by which to introduce previously available evidence and to advocate novel legal theories in an effort to revisit an adverse ruling.

III. <u>Evidence of Plaintiffs' Understanding of the Rate Guarantees</u>.

Next, plaintiffs say the court erred in granting defendant's motion for summary judgment since they introduced sufficient

evidence to establish a genuine dispute as to a material fact: their claimed understanding that the three-year rate guarantees under the plans effectively (albeit implicitly) modified the policy's termination provisions. The court addressed that issue in detail in its earlier order and that discussion need not be reiterated. It is sufficient to note the court's conclusion that even if plaintiffs actually believed the plans' rate guarantees precluded U.S. Life from terminating the policy within the rate guarantee period, that was a unilateral mistake. Consequently, the court held, "because no evidence suggests defendant was aware of plaintiffs' unilateral mistake, U.S. Life retained its right to cancel the policy on any anniversary date after the first, even though it agreed to a three-year rate guarantee." September Order at 20.

Plaintiffs' related assertion that they were somehow "denied" the opportunity to present evidence of industry "custom and usage" is equally unavailing. As the court observed in its September Order, the terms of the overriding insurance policy were unambiguous. Consequently, there was no need to resort to

extrinsic evidence, such as alleged customary practices in the insurance industry, in construing the policy language.

IV.  Consideration Given in Exchange for the Rate Guarantees.

Plaintiffs repeatedly (and erroneously) claim that three-year rate guarantees under their plans would be "valueless" if U.S. Life retained the right to unilaterally cancel the overriding policy within the period covered by the rate guarantees.  See Plaintiffs' memorandum at 9-10.  So, for example, plaintiffs say:

> Hitchcock understood that this rate guarantee had value and meant that it would receive LTD coverage at the specified rates from the Defendant for the duration of the rate guarantee, or until December 31, 2000.  If the Defendant could have simply cancelled LTD coverage on January 1, 1998 or any other time during the three-year rate guarantee, then there would have been no value to Hitchcock in obtaining the Request for Change in Plan.

Id., at 10 (quoting affidavit of David Brooker) (emphasis supplied).  That assertion is plainly incorrect.  Although U.S. Life retained the right to cancel the policy in accordance with the policy's termination provisions, plaintiffs still received a meaningful benefit from the rate guarantees: for at least three years, or until U.S. Life cancelled the overriding insurance

10

policy, plaintiffs were guaranteed that the premiums under their individual plans would not rise.

A final point on this topic bears mentioning. Plaintiffs' argument that they received nothing of value in exchange for the agreement to pay (allegedly) higher premiums seems to be based, at least in part, on an erroneous reading of the Court's September Order. In their motion for reconsideration, plaintiffs say:

> In its [September] Order, the Court states that "nor is there any evidence that U.S. Life either attempted to exact a higher premium rate during a rate guarantee period." Order, p. 13. Contrary to this finding, Hitchcock gave additional consideration for the three year rate guarantee through a higher premium rate.
>
> * * *
>
> Having paid additional consideration for the three year guarantee there should be some quid pro quo: Hitchcock is entitled to receive the value which is not recognized by the Court's Order.

Plaintiffs' memorandum at 8-9. That argument misconstrues the court's order in a fairly fundamental way. The language quoted by plaintiffs, when viewed in its proper context, plainly reveals that the court concluded, on the record then before it, that

11

there was no evidence that U.S. Life had, during the rate guarantee period, attempted to <u>circumvent</u> those guarantees by, for example, threatening cancellation of the policy if plaintiffs did not agree to renegotiate their plan premiums upward, notwithstanding the guaranteed rates to which defendant previously agreed. The order does not speak to increased premiums plaintiffs may have paid to secure the guaranteed rates.

V.    <u>Evidence of Defendant's "Bad Faith."</u>

Next, plaintiffs assert that the court's ruling on defendant's motion for summary judgment denied them the opportunity to present evidence of defendant's "bad faith" - that is, plaintiffs' assertion that defendant cancelled the policy in an alleged effort to extort plan premiums in excess of those established by the three-year rate guarantees. The record is, however, clear that plaintiffs did <u>not</u> raise that issue in their opposition to defendant's motion for summary judgment. And, in its September Order, the court concluded that even if plaintiffs had made such an argument, there was no evidence in the record to support it.

> Nor is there any evidence that U.S. Life either attempted to exact a higher premium rate during a rate guarantee period, or exercised its discretion under the cancellation provision as a means by which to circumvent the rate guarantee and extort a higher premium (i.e., by threatening cancellation if plaintiffs did not acquiesce to a higher premium rate) - facts that might give rise to a claim that U.S. Life breached an implied covenant of good faith.

Id., at 13. Seizing upon that observation, plaintiffs now seek to exploit it by arguing that: (1) defendant's alleged bad faith is a genuinely disputed material fact; and (2) they intended to present evidence of defendant's alleged bad faith at trial.

As noted above, however, if plaintiffs were relying upon that contention, they were obligated to raise it in opposition to summary judgment; parties are not permitted to hold such arguments in reserve and leak them out only in the event of an adverse ruling. Once they became aware of evidence of defendant's alleged bad faith (and assuming they wished it to be considered), plaintiffs were obligated to supplement their opposition to defendant's pending motion for summary judgment. They did not and, having made that election, whether deliberately or inadvertently, they must stand by it. A motion to reconsider is not the appropriate means by which to raise arguments that

13

could have been, but were not, raised earlier, or to present evidence that could have been, but was not, presented earlier.

In a final effort to avoid the conclusion that they failed to adequately raise and brief defendant's alleged bad faith in their opposition to summary judgment, plaintiffs suggest that the court erred by failing to consider the <u>entire record</u> in the light most favorable to them.  That is, plaintiffs argue that if, prior to granting defendant's motion for summary judgment, the court were to have looked beyond their legal memorandum, and examined the "complete record," including plaintiffs' pretrial statement materials and trial memorandum, it would have realized that defendant's alleged bad faith was a genuinely disputed material fact.  That argument warrants little discussion, other than to repeat the thematic point of this order: if plaintiffs were relying on a claim that defendant acted in bad faith and if they believed that the issue was both material and genuinely disputed, thereby foreclosing judgment as a matter of law in favor of defendant, that point should have been clearly discussed and briefed in their opposition to summary judgment.  It was not.

14

Nevertheless, even if the court were to have turned to plaintiffs' pretrial statement, it would have seen that, contrary to the claims presently advanced in their motion to reconsider, see plaintiffs' memorandum at 2, they did not identify defendant's alleged bad faith as one of only four "relevant contested facts in this case." Plaintiffs' pretrial statement (document no. 30) at 4.

## Conclusion

A motion for reconsideration filed pursuant to Rule 59 is a means by which a party may request the court to revisit an earlier ruling in light of manifest errors of law or newly discovered evidence. Plaintiffs have pointed to neither. The so-called "newly discovered" evidence on which plaintiffs rely is "new" only in the sense that it was not previously presented to the court; it is not "new" in the sense that it was only recently discovered and, for that reason, unavailable to plaintiffs prior to the court's ruling on defendant's motion for summary judgment. To the contrary, as plaintiffs themselves concede, they were in possession of such evidence prior to the court's September Order, but rather than submit it in opposition to defendant's pending

15

motion, chose instead to hold it with the purpose of presenting it for the first time at trial.  A motion to reconsider is not the vehicle by which to correct such mistakes.

If plaintiffs wanted a commitment from U.S. Life that the policy would not be cancelled during the three-year plan premium guarantee period, they surely could have asked for it.  They did not.  And, their claim that the premium rate guarantees under their respective plans necessarily, albeit implicitly, modified the policy's termination provisions is, for the reasons discussed in the court's September Order, unpersuasive.

Plaintiffs' motion for reconsideration (document no. 39) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 31, 2001

cc:   Ronald L. Snow, Esq.
      Robert R. Lucic, Esq.
      Irwin B. Schwartz, Esq.

16