## State Farm Mutual Auto Insurance Company v. Eric Powers, Nationwide Insurance Company and Allstate Insurance Company

[732 A.2d 730]

No. 98-068

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed April 9, 1999

Motions for Reargument Denied May 10, 1999

*Richard H. Wadhams, Jr.,* and *James E. Preston* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Plaintiff-Appellee State Farm Mutual Automobile Insurance Company.

*Michael J. Gannon* and *Lisa M. Werner* of *Affolter Gannon & Flynn, Ltd.,* Burlington, for Defendant-Appellant Nationwide Insurance Company.

*Charles Platto* and *Elizabeth K. Rattigan* of *Brooks McNally Platto & Vitt,* Norwich, for Defendant-Appellee Allstate Insurance Company.

**Skoglund, J.** This declaratory judgment action involves a dispute regarding how to apportion damages among three insurance carriers providing uninsured/underinsured (UM) motorist coverage to a passenger injured in an automobile accident. The superior court determined, based on the insurers' respective policy provisions, that the insurer providing coverage to the operator of the vehicle struck by the underinsured motorist was the primary insurer and thus was required to exhaust its policy limits before the other carriers were obligated to extend coverage. The principal issue on appeal is whether insurers may designate their UM coverage as primary or excess relative to other insurers providing such coverage, thereby establishing the order of payment among the insurers. We conclude that such policy provisions do not violate Vermont law, as long as they do not reduce the total UM coverage available to insureds. We also conclude, however, that the primary insurer in this instance was entitled to at least its pro rata share of an offset representing the sum received by the insured directly from the tortfeasor's liability carrier. Accordingly, we reverse the superior court's judgment.

The material facts are not in dispute. In August 1994, a vehicle driven by James Styles ran head-on into a vehicle driven by Darren Smith, injuring Eric Powers, who was a passenger in the Smith vehicle. After receiving the $25,000 policy limit from Styles's liability carrier, Powers filed underinsured motorist claims with (1) Nationwide Insurance Company, which insured Smith; (2) Allstate Insurance Company, which insured Powers himself; and (3) State Farm Mutual Automobile Insurance Company, which insured the Powers family.

The personal automobile policy issued to Smith by Nationwide provided up to $25,000 in UM coverage for damages resulting from bodily injury to any person occupying the insured's automobile. The policy's UM coverage endorsement contained the following "other insurance" provision:

### OTHER INSURANCE

If there is other insurance:

1. For bodily injury suffered by an insured while occupying a motor vehicle other than your auto, we will pay the insured loss not covered by other insurance.

2. Any amounts paid or payable by or for any liable parties will be apportioned pro rata to offset all available limits of Uninsured Motorist coverage.

3. Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss.

The personal automobile policy issued to Powers by Allstate provided up to $20,000 in UM coverage for bodily injury sustained by the insured as the result of an accident. The policy contained the following provision within its UM section:

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

Two State Farm policies were issued to Eric Powers's parents, with whom he resided at the time of the accident. Each of those policies provided $100,000 in UM coverage to the Powers family and contained the following provision regarding that coverage:

**If There Is Other Coverage**

. . . .

3. If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative, this coverage applies:

a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this

coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.

The three carriers and Powers submitted Powers's claim to arbitration pursuant to the insurance contracts. Following an arbitration hearing, Powers was awarded $175,000 in damages for his injuries. The carriers agreed that Powers was entitled to $150,000 in UM coverage — the $175,000 award less the $25,000 paid by the tortfeasor's insurer. See 23 V.S.A. § 941(e) (if payment is made under uninsured motorist coverage, insurer is entitled to recover to extent of payment from any person legally responsible for damages); § 941(f) (motor vehicle is underinsured to extent that its personal injury limits of liability at time of accident are less than limits of uninsured motorists coverage applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage); *Webb v. United States Fidelity & Guar. Co.*, 158 Vt. 137, 141-42, 605 A.2d 1344, 1347 (1992) (Vermont's statutory underinsured motorist provision provides coverage that fills the gap between tortfeasor's liability coverage and insured party's underinsured motorist coverage).

The parties disagreed, however, on how to apportion their obligation to reimburse Powers. Nationwide contended that the three insurers should divide their debt to Powers in equal proportion to each carrier's coverage limit. On the other side, State Farm and Allstate asserted that Nationwide was the primary carrier and thus should pay its policy limits of $25,000, after which they would pay the remainder of the debt on a pro rata basis. In accordance with their respective positions, Nationwide paid Powers $15,306, Allstate paid $11,364, and State Farm paid $113,636, leaving Powers $9694 short of the $150,000 in UM coverage to which he was entitled.

As a result of the disagreement, State Farm filed a complaint for declaratory judgment in superior court. The court ultimately granted summary judgment to State Farm and Allstate, ruling that Nationwide, as the primary carrier, was obligated to exhaust its $25,000 policy limit before State Farm or Allstate, as excess carriers, were required to make any payments toward the claim. On appeal, Nationwide argues that labeling any applicable UM coverage as excess unlawfully conditions the statutory requirement that each and every automobile insurance policy provide UM coverage, in violation of 23 V.S.A. § 941(a), and improperly affects UM coverage provided by other insurers, in violation of *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 618 A.2d 488 (1992). Nationwide contends that when UM

coverage provided by multiple insurers exceeds damages, each insurer should pay its pro rata share, notwithstanding the existence of other insurance provisions purporting to establish primary or excess coverage.

## I.

■ We reject Nationwide's argument that labeling UM coverage as excess, in and of itself, violates Vermont law mandating UM coverage. Section 941(a) requires each and every automobile insurance policy delivered in Vermont to provide coverage for insureds who are legally entitled to recover damages from owners or operators of uninsured, underinsured, or hit-and-run vehicles. "No policy can be issued which reduces the amount of coverage mandated by statute." *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 499, 536 A.2d 914, 916 (1987). Nevertheless, provisions that merely establish the priority of coverage among insurers without compromising coverage for insureds do not violate § 941(a). See *Aetna Cas. & Sur. Co. v. CNA Ins. Co.*, 606 A.2d 990, 992-93 (Conn. 1992) ("other insurance" clauses establishing order of coverage between insurers are valid and do not violate public policy, as long as their enforcement does not compromise coverage for the insured); *Farmers Ins. Co. v. Prudential Prop. & Cas. Ins. Co.*, 692 P.2d 393, 396-97 (Kan. Ct. App. 1984) (insurance provisions merely seeking to establish priority of payments between insurers, without diminishing coverage to insureds, are not violative of public policy or statute compelling UM coverage); see also *Champlain Cas. Co. v. Agency Rent-A-Car, Inc.*, 168 Vt. 91, 101, 716 A.2d 810, 816 (1998) (because purpose of financial responsibility and compulsory insurance laws is to protect public, nothing in policies behind those laws governs how payments are allocated among insurers).

Our decision in *Monteith* does not suggest otherwise. In that case, the plaintiff was injured when struck by an automobile while riding his motorcycle. The plaintiff had one insurance policy with Jefferson Insurance Company covering his motorcycle and another policy with Peerless Insurance Company covering other vehicles he owned. The Peerless policy stated that it did not provide UM coverage for bodily injury sustained by any person while occupying a motor vehicle owned by the insured but not covered under the policy. In holding that the provision violated § 941(a) and thus was unenforceable, we noted that the essence of UM coverage under the statute is its portability because it is designed to protect persons, not vehicles. See *Monteith*,

159 Vt. at 381, 618 A.2d at 490 (§ 941(a) does not permit insurers to condition coverage based on location or status of insured). We also stated, in noting that interpolicy anti-stacking[1] provisions violate § 941(a) and thus are unenforceable, that an insurer is without power "to delimit or affect UM coverage in policies written by other insurers." *Id.* at 383, 618 A.2d at 491.

Nationwide misconstrues and overextends the meaning of these statements in arguing that they demonstrate that insurers may not designate UM coverage as excess. In *Monteith*, the concern was that insurers were inserting into their policies provisions limiting the contexts in which UM coverage was available and the ability of insureds to stack multiple policies — the kind of exclusions that threatened to defeat the broad, remedial purpose of UM coverage. See *id.* at 381-82, 618 A.2d at 490. It was in this context that we noted the portability of UM coverage and the restrictions on the ability of insurers to delimit or affect each others' UM coverage. Neither *Monteith* nor any other Vermont case stands for the proposition that automobile insurance policies may not contain provisions seeking to prioritize their coverage with respect to coverage available in other policies.

■ Unless prohibited by statute or public policy, an insurer's liability is controlled by its policy provisions; thus, we "will heed primary-excess provisions where the rights of the policyholder will not be adversely affected." 16 R. Anderson, Couch on Insurance § 62.41, at 475 (2d ed. 1983); see *Aetna Cas. & Sur. Co.*, 606 A.2d at 993 (if enforcement of nonconflicting "other insurance" clauses would not produce adverse consequences for insureds, then clauses should be enforced as written). Many insurance policies, including those at issue here, incorporate the generally accepted position that "the insurer of a vehicle involved in a collision has primary [UM] coverage for the passengers of that vehicle, while the insurer of a passenger in that vehicle has excess coverage for that passenger." *Elrod v. General Cas. Co. of Wisconsin*, 566 N.W.2d 482, 486 (S.D. 1997) (citing treatises); see *Millers Cas. Ins. Co. of Texas v. Briggs*, 665 P.2d 887, 889-90 (Wash. 1983) (accord); 16 Couch, *supra*, § 62.73, at 533 (courts generally reach conclusion that policy issued to owner of vehicle involved in accident provides "primary" UM coverage, and that

---

[1] "'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy would be inadequate." *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 383 n.2, 618 A.2d 488, 491 n.2 (1992).

insurer issuing it is liable up to limits of policy without apportionment).

Notwithstanding Nationwide's arguments to the contrary, this is not a case in which the applicable policies contain conflicting provisions, at least with respect to establishing the priority of coverage. Nor does this case involve a dispute between multiple insurers all claiming to provide either excess or primary coverage, in which case the coverage would be apportioned among the insurers on a pro rata basis. See *Champlain Cas. Co.*, 168 Vt. at 97-98, 716 A.2d at 814 (majority of jurisdictions prorate coverage among multiple insurers when conflicting excess "other insurance" provisions in applicable policies are deemed mutually repugnant); *Hoffmaster v. Harleysville Ins. Co.*, 657 A.2d 1274, 1277 (Pa. Super. Ct. 1995) (vast majority of courts have adopted rule that irreconcilable "other insurance" clauses in automobile liability insurance policies are mutually repugnant, thereby rendering each as providing primary coverage).

Rather, each of the policies involved in this appeal provide UM coverage, as required by law, but indicate that the coverage will be excess when involving a vehicle not owned by the insureds named in the policy. Without using the words "primary" or "excess," the Nationwide policy expressly states that, for bodily injury suffered by an insured while occupying a vehicle not owned by the policyholder or spouse, Nationwide will provide coverage only to the extent that the insured's loss is not covered by other insurance. We find unavailing Nationwide's protest that nowhere in its policy provisions does it declare its UM coverage to be primary with respect to covered vehicles owned by the policyholder. The only rational conclusion that can be derived from the Nationwide policy is that it provides primary coverage when the insured is injured while occupying a vehicle owned by the policyholder, which is the case here. See *Elrod*, 566 N.W.2d at 485 (although insurance clause did not specifically state that insurer would provide primary coverage for vehicles owned by insured, that was only logical conclusion to be reached because "other insurance" provision in policy provided excess coverage only with respect to nonowned vehicles); see also *Aetna Cas. & Sur. Co.*, 606 A.2d at 994 (policy providing excess coverage with respect to nonowned vehicles did not envision being excess in situation where injured party was occupying vehicle owned by named insured; therefore, policy provided primary coverage); *Skidgell v. Universal Underwriters Ins. Co.*, 697 A.2d 831, 834 (Me. 1997) (insurance coverage is considered primary in absence of language designating coverage as excess).

None of Nationwide's arguments undermine this conclusion. First, the provisions establishing priority of coverage are not nullified by the fact that they also contain unenforceable excess-escape components.[2] "[T]he mere coupling of an inoffensive clause with one which must be void as an attempt to limit coverage need not render the entire provision void." *Farmers Ins. Co.*, 692 P.2d at 397. Second, we find no merit to Nationwide's argument that Allstate's excess coverage provision fails to mention and therefore does not apply to situations involving bodily injury. See *Elrod*, 566 N.W.2d at 486 (inclusion of coverage for bodily injury is implied when underinsured coverage is defined to include bodily injury and excess coverage provision refers to "vehicle").

▪ Finally, we are not concerned that insurers may attempt to provide only excess coverage in an ever widening variety of contexts to avoid UM coverage. Section 941(a) mandates UM coverage in each and every policy. As we noted above, in situations where all of the applicable policies purport to provide only excess coverage, that coverage will be deemed to be primary and thus shared pro rata among the insurers. See *Blevio v. Aetna Cas. & Sur. Co.*, 844 F. Supp. 849, 853 (D. Mass. 1993) (if insurers issue mutually repugnant "other insurance" clauses providing excess coverage, they are considered to have provided primary coverage and thus must share loss pro rata to extent of coverage), *aff'd*, 39 F.3d 1 (1st Cir. 1994); *Onley v. Nationwide Mut. Ins. Co.*, 456 S.E.2d 882, 884 (N.C. Ct. App. 1995) (where policies of two insurers contained mutually repugnant excess UM coverage provisions, both would be required to share liability for UM coverage on pro rata basis); 8A J. Appleman, Insurance Law and Practice § 4906, at 348, and § 4909, at 383-90 (rev. ed. 1981) (if excess clauses are mutually repugnant, insurers share same risk as if both were primary; excess clauses are unenforceable when primary coverage is unavailable).

▪ In sum, the parties' policy provisions in this case unambiguously establish a consistent method for prioritizing UM coverage —

---

[2] An excess-escape clause attempts to limit UM coverage to the amount by which its policy limit exceeds the limits of other applicable policies providing UM coverage, thereby violating prohibitions against interpolicy anti-stacking provisions. See *Goodrich v. Lumbermens Mut. Cas. Co.*, 423 F. Supp. 839, 840, 843 (D. Vt. 1976) (striking excess-escape provision that precluded interpolicy stacking of UM coverage); 8A J. Appleman, Insurance Law and Practice § 4906, at 349 (rev. ed. 1981) (explaining excess-escape clause); *Farmers Ins. Co. v. Prudential Prop. & Cas. Ins. Co.*, 692 P.2d 393, 396 (Kan. Ct. App. 1984) (same).

coverage is primary when the claimant is injured while occupying a vehicle owned by the policyholder and is excess when the claimant is injured while occupying a vehicle not owned by the policyholder. We honor that method because it neither reduces coverage to the insured nor violates statutory law or public policy.[3] See *Champlain Cas. Co.*, 168 Vt. at 98 n.1, 716 A.2d at 814 n.1 ("If the policies provide for a method of apportioning loss, we will honor that method."). In this case, Nationwide is the primary insurer because its policyholder was the owner/operator of the vehicle in which Eric Powers was injured; on the other hand, Allstate and State Farm are excess insurers because their policyholders did not own the vehicle involved in the accident. As the primary insurer, Nationwide must exhaust its policy limit before the excess coverage is tapped. To the extent that Nationwide's policy contains a separate provision purporting to pro rate its coverage with other "similar" coverage, that provision has no effect in these circumstances. See 16 Couch, *supra*, § 62.72, at 530 (where excess and pro rata clauses conflict, pro rata clause is disregarded and full effect is given to excess clause); 8A J. Appleman, *supra*, § 4909.25, at 409 (excess clause prevails over pro rata clause because excess coverage is not "other valid and collectible insurance" within pro rata clause).

## II.

Our determination that Nationwide provides primary coverage and thus is required to exhaust its policy limit before the other insurers' excess coverage is triggered does not end our inquiry. The question remains — which of the UM insurers, if any, are entitled to offset any part or all of the $25,000 paid by the underinsured motorist? Although Nationwide briefly suggests that it is entitled to offset the entire sum, it declares that it seeks only its pro rata share of the offset. Allstate contends, on the other hand, that none of the UM insurers may offset

---

[3] At least one court, in an effort to untie the "Gordian Knot" of coverage created by competing and often conflicting "other insurance" clauses, has held that all insurers providing coverage that would be primary if it were the only coverage available must pay damages on a pro-rata basis. See *Hindson v. Allstate Ins. Co.*, 694 A.2d 682, 683, 685-86 (R.I. 1997). The Rhode Island Supreme Court took this position to protect insureds whose compensation for injuries resulting from accidents with UM motorists was being delayed because of entrenched battles between insurers over coverage issues. See *id.* at 685-86. The parties in this case have made no showing that public policy requires us to impose a similar rule in Vermont at this time; however, we do not foreclose the possibility of adopting such a rule in the future if a showing of need, based on public policy grounds, is made at some later time.

the $25,000 paid by the underinsured motorist because that amount has already been subtracted from the amount due Eric Powers. According to Allstate, allowing Nationwide to set off any part of the tortfeasor's payment would violate the policy announced in *Monteith* prohibiting interpolicy anti-stacking provisions.

We are not persuaded by Allstate's arguments. While it is true that the total coverage available from the UM insurers exceeded Powers's damages, and that the $25,000 from the uninsured motorist reduced the UM coverage from $175,000 to $150,000, these facts do not resolve whether the primary insurer is entitled to offset all or part of the tortfeasor's payment. A case before the Connecticut Supreme Court is illustrative. There, the claimant incurred $400,000 in damages, and was paid $100,000 by the tortfeasor's insurer, entitling her to $300,000 in UM coverage. See *Aetna Cas. & Ins. Co.*, 606 A.2d at 991. The arbitration panel required the insurer providing coverage to the owner of the vehicle involved in the accident, as the primary insurer, to exhaust its coverage before the excess coverage of the other insurer was tapped. After giving the primary insurer full credit for the tortfeasor's $100,000 payment, the panel ordered the primary insurer to pay the first $200,000 of UM coverage and the excess insurer to pay the additional $100,000. The panel's award, which had been vacated by the superior court, was reinstated by the Connecticut Supreme Court. See *id.* at 994.

Although the question of whether the primary insurer was entitled to a full setoff of the tortfeasor's payment was not at issue in that case, the majority of courts directly addressing the issue have concluded that the insurer providing primary UM coverage is entitled to offset its liability with any payment obtained from the tortfeasor. For example, in *Cobb v. Allstate Insurance Co.*, 663 A.2d 38 (Me. 1995), the primary insurer's $40,000 limit of liability for UM coverage was reduced by the $25,000 payment from the tortfeasor, while the excess insurer, which provided $100,000 in UM coverage, was obligated to pay damages exceeding $40,000. In that case, the Supreme Judicial Court of Maine reasoned:

> Because Allstate's policy is excess, it has no applicability at all until the primary coverage is exhausted. The denial of any setoff to Allstate is a logical corollary to the lack of risk it faces until [the insured] has sustained damages above $40,000, the limit of the primary insurer's responsibility. In so holding, we are in agreement with most of the jurisdictions that have considered the issue. . . .

. . . .

> Application of any monies received by an insured from a tortfeasor as an offset to the first-tier provider's liability is more logical and efficient than prorating. As would have been the case here, the primary insurer will be able to settle more quickly with its insured and remove itself from further legal disputes. The reduced need for litigation will not only result in lessened costs to consumers, but will reduce the strain on overburdened judicial resources.

*Id.* at 40-41 (citing cases); *see Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 614 So. 2d 918, 922-23 (Miss. 1992) (primary insurer was entitled to offset first from tortfeasor's payment).

In most instances, courts that have prorated setoffs have done so when both insurers provided primary coverage. See *Blevio*, 39 F.3d at 4 (two primary insurers must share $200,000 setoff pro rata to extent of their coverage); *Skidgell*, 697 A.2d at 835 (two insurers providing primary UM coverage were entitled to prorated setoff). The only exception that we have found is in *Ellis v. Royal Insurance Cos.*, 530 A.2d 303, 311 (N.H. 1987), where the New Hampshire Supreme Court applied a "sliding-scale" approach in apportioning the offset between the primary and excess insurer, rather than uphold the trial court's determination that the credit should be split evenly.

Allowing Nationwide to offset the entire $25,000 against its primary UM coverage, which would in effect reduce its obligation to zero, would not violate our holding in *Monteith*. In *Monteith*, we rejected as unenforceable an insurance policy provision that denied UM coverage in instances in which the limit of liability of the underinsured motorist was less than the limit of liability provided in that policy. We concluded that the provision was unenforceable because it effectively foreclosed interpolicy stacking of UM coverage and thus reduced the UM coverage available to the injured party. See *Monteith*, 159 Vt. at 384-85, 618 A.2d at 491-92. Here, in contrast, permitting Nationwide, as the primary insurer, to set off the amount obtained from the underinsured motorist neither precludes interpolicy stacking nor reduces the UM coverage available to Eric Powers.

Nevertheless, we conclude that in this instance Nationwide is entitled to only its pro rata share of the offset. Nationwide's "other insurance" provision within its UM coverage endorsement expressly states that any amounts paid by any liable party "will be apportioned

pro rata to offset all available limits of Uninsured Motorist coverage." Perhaps for this reason, Nationwide has not adequately raised or briefed any request for offset of the entire $25,000 paid by the underinsured motorist. Although the superior court suggests at one point that Nationwide was seeking credit for the $25,000, we find no such request in the record below. Indeed, Nationwide's position all along has been that the setoff should be apportioned among the insurers pro rata. None of the claims of error in Nationwide's main brief contend that the court erred by not giving Nationwide credit for the entire $25,000. Indeed, in its reply brief, Nationwide declares that it is not claiming to be entitled to the entire offset of $25,000. Nationwide's one-sentence statement in a footnote in its reply brief that the Court should consider whether Nationwide is entitled to the entire offset if it is considered to be the primary insurer does not sufficiently raise or brief the argument. See *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 86, 702 A.2d 397, 404 (1997) (issues not briefed in original briefs may not be raised for first time in reply brief); *Persons v. Lehoe*, 150 Vt. 582, 587, 554 A.2d 681, 684 (1988) (Supreme Court will not decide issues inadequately briefed).

■ Given the language in Nationwide's "other insurance" clause and the positions taken by the parties in this appeal, we apportion credit for the tortfeasor's $25,000 payment as follows. Nationwide provided 10.2% of the total UM coverage and thus is entitled to setoff 10.2% of the tortfeasor's payment, which equals $2550. Subtracting $2550 from the $25,000 in coverage provided by Nationwide, we arrive at the total amount Nationwide must pay Eric Powers — $22,450. Having paid only $15,306, Nationwide owes an additional $7144. The balance of the $150,000 that the UM insurers owe Powers ($150,000 - $22,450 = $127,550) must be divided between the excess insurers on a pro rata basis. State Farm provided 91% of the excess coverage and thus must pay $116,070. Having paid only $113,636, State Farm owes an additional $2434. Allstate provided 9% of the excess coverage and thus must pay $11,480. Having paid only $11,364, Allstate owes an additional $116. We emphasize that the allocation set forth in this opinion is limited to the circumstances of this particular case.

*Reversed and remanded for the superior court to enter judgment consistent with this opinion.*