2009 VT 53

**Susann HUMPHREY v. VERMONT MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Automobile Insurance Company**

[979 A.2d 452]

No. 08-173

¶ 1. May 14, 2009. Susann Humphrey was seriously injured when the car in which she was a passenger was struck, head-on, by another automobile. The driver of the car in which Ms. Humphrey was a passenger was insured by State Farm Mutual Insurance Company (State Farm). Ms. Humphrey had an automobile insurance policy with Vermont Mutual Insurance Company (Vermont Mutual). She brought suit to enforce uninsured/underinsured motorist (UM/UIM) provisions in both the Vermont Mutual and the State Farm policies. State Farm filed a motion for summary judgment with regard to its obligations to Ms. Humphrey. The superior court granted State Farm's motion, and Vermont Mutual appealed. We affirm.

¶ 2. The relevant facts are not in dispute. On February 5, 2005, Ms. Humphrey was riding in the back seat of a car owned and driven by a friend when the tortfeasor crossed the center line of the road and collided with the friend's vehicle. Liability for the accident rested completely with the tortfeasor. The tortfeasor was insured by Allstate Insurance Company (Allstate) with liability coverage of $100,000, which, with the consent of Ms. Humphrey's insurers, Allstate tendered and Ms. Humphrey accepted. The tortfeasor was then released from this litigation. Ms. Humphrey asserted a claim against State Farm and Vermont Mutual for damages in excess of the amount covered by the tortfeasor's insurance.

¶ 3. The driver's State Farm policy provided UM/UIM coverage of $50,000 per person and $100,000 per accident. The State Farm policy contained the following "other insurance" provision, the purpose of which was to establish priority of payment when multiple UM/UIM policies applied:

**If There Is Other Coverage**

> 1. If the *insured* sustains *bodily injury*:

a. as a pedestrian and other uninsured motor vehicle coverage applies; or

b. while *occupying your car*, and *your car* is described on the declarations page of another policy providing uninsured motor vehicle coverage, we are liable only for our share. Our share is that percentage of the damages that the limit of liability of this coverage bears to the total of all such uninsured motor vehicle coverage applicable to the accident.

2. If the *insured* sustains *bodily injury* while *occupying* a vehicle which is not *your car*, this coverage applies as excess to any uninsured motor vehicle coverage which applies to the vehicle as the primary coverage. If coverage under more than one policy applies as excess, we are liable only for our share. Our share is that percent of the damages that the limit of liability of the coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.

¶ 4. Ms. Humphrey's Vermont Mutual policy provided $300,000 of UM/UIM coverage. That policy contained the following "other insurance" provision:

**OTHER INSURANCE**

If there is other applicable insurance similar to the insurance provided under this Part of the policy, we will pay only our share of the loss. Our share is that proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance similar to the insurance provided under this Part of the policy.

¶ 5. In August 2007, Ms. Humphrey filed a complaint in superior court alleging that she had made a demand pursuant to the UIM policy limits from State Farm and Vermont Mutual, that they had refused her demands, and that they had breached their contractual duties by failing to pay damages for bodily injury. State Farm moved for summary judgment, claiming that the tortfeasor's $100,000 liability payment completely offset its $50,000 per person UIM coverage and nullified its obligation to Ms. Humphrey. Vermont Mutual argued that the $100,000 offset should be shared between it and State Farm on a proportional basis. The superior court granted State Farm's motion. It recognized some lack of clarity in the law of Vermont, but concluded that our decision in *State Farm Mutual Auto Insurance Co. v. Powers*, 169 Vt. 230, 732 A.2d 730 (1999), indicated the correct course of resolution. In *Powers*, we endorsed the majority view that the offset applies first to the primary coverage. *Id.* at 240-41, 732 A.2d at 737-38. Accordingly, the superior court held that State Farm, the primary insurer here, would receive a $50,000 offset, thus avoiding liability to Ms. Humphrey, and that Vermont Mutual would have the benefit of the remaining $50,000 offset.

¶ 6. Vermont Mutual appeals, urging us to prorate the credit. By their proposed allocation method, they would receive the proportion of the credit that their UIM coverage bears to the total UIM coverage, or roughly $86,000 of the $100,000 offset. Vermont Mutual argues that: (1) our decision in *Powers* does not control the current case; (2) 23 V.S.A. § 941(e) entitles them to a pro rata share of the offset; and (3) public policy considerations favor pro rata allocation.

¶ 7. We review decisions on motions for summary judgment de novo by applying the same standards as the trial court. *Myers v. LaCasse*, 2003 VT 86A, ¶ 15, 176 Vt. 29, 838 A.2d 50. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Because the parties do not raise factual issues, we review the current case strictly to determine whether State Farm was entitled to judgment as a matter of law.

¶ 8. Some background in Vermont's UM/UIM law is required. UM/UIM insurance provides coverage when a tortfeasor's liability insurance is insufficient to compensate the insured. Under 23 V.S.A. § 941(a), motor vehicle liability policies delivered or issued in Vermont must include UM/UIM insurance. A vehicle is uninsured if it is either not insured or is covered by an insolvent insurer. *Id.* § 941(d). A vehicle is underinsured if the liability insurance limits applicable at the time of an accident are less than the limits of the UM/UIM coverage applicable to the insured. *Id.* § 941(f). Essentially, the statutory UM/UIM requirement ensures coverage that fills the gap between a tortfeasor's liability coverage and an insured party's UM/UIM coverage. *Webb v. U.S. Fid. & Guar. Co.*, 158 Vt. 137, 141-42, 605 A.2d 1344, 1347 (1992). "The 'overriding purpose' of this UM/UIM requirement is to 'protect[] the insured from the misfortune of being involved in an accident with a financially irresponsible driver.' " *Hubbard v. Metro. Prop. & Cas. Ins. Co.*, 2007 VT 121, ¶ 7, 182 Vt. 501, 944 A.2d 891 (quoting *Feeley v. Allstate Ins. Co.*, 2005 VT 87, ¶ 9, 178 Vt. 642, 882 A.2d 1230 (mem.)).

¶ 9. The insured may "stack" UM/UIM policies. " 'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy would be inadequate." *Monteith v. Jefferson Ins. Co. of N.Y.*, 159 Vt. 378, 383 n.2, 618 A.2d 488, 491 n.2 (1992). In protecting the rights of insureds to stack policies, we have explicitly held that policy provisions preventing interpolicy stacking violate the terms of § 941 and will not be enforced. *Id.* at 385, 618 A.2d at 492.

¶ 10. When multiple insurers provide UM/UIM coverage, they may establish priority of payment by designating themselves as either primary or excess in the terms of their policies as long as those terms do not adversely affect the rights of the policyholder. *Powers*, 169 Vt. at 236, 732 A.2d at 735. The excess policy becomes effective only after the primary policy is exhausted. *Id.* at 240-41, 732 A.2d at 737-38. Under the majority rule, if multiple policies purport to provide either excess or primary coverage, those terms are void as "mutually repugnant," and the damage is prorated among the insurers. *Champlain Cas. Co. v. Agency Rent-A-Car, Inc.*, 168 Vt. 91, 97-98, 716 A.2d 810, 814-15 (1998). Absent provisions establishing priority of coverage, courts generally find that the policy issued to the owner of the vehicle involved in an accident provides primary UM/UIM coverage to the passengers of that vehicle, and that policies issued to a passenger provide excess UM/UIM coverage for that passenger. *Powers*, 169 Vt. at 236-37, 732 A.2d at 735 (citing cases and treatises). In the current case, the terms of the policies designate State Farm as primary, and Vermont Mutual as excess.

¶ 11. Finally, Vermont law entitles UM/UIM insurers to subrogation. Under § 941(e), "[i]f payment is made under uninsured motorist coverage, and subject to the terms of that coverage, to the extent of that payment, the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury." This statutory right of

subrogation "enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay." *Korda v. Chicago Ins. Co.*, 2006 VT 81, ¶ 22, 180 Vt. 173, 908 A.2d 1018 (quotation omitted).

¶ 12. The subrogation right established by § 941(e) entitles State Farm and Vermont Mutual to offset the total UIM coverage of $350,000 by the $100,000 Allstate paid on behalf of the tortfeasor. The issue in this case is how to allocate that offset. We take this opportunity to clarify that our decision in *Powers* controls this question.

¶ 13. In *Powers*, we decided two issues. First, we considered whether insurers may designate themselves as primary or excess. As explained above, we held that they may. *Powers*, 169 Vt. at 232, 732 A.2d at 732. Second, we considered which UM/UIM insurer may offset its coverage by any or all of the underinsured motorist's liability payment. *Id.* at 240, 732 A.2d at 737. Reasoning that the excess coverage "has no applicability . . . until the primary coverage is exhausted," we discussed approvingly the majority view that the insurer providing primary UM/UIM coverage is entitled to offset its coverage with any payment obtained from the tortfeasor. *Id.* at 240, 732 A.2d at 737-38 (quotation omitted).* However, we limited

the primary insurer's offset to a pro rata share because, in *Powers*, the terms of the policy called for a pro rata share and because the insurer requested only a pro rata share. *Id.* at 241-42, 732 A.2d at 738-39.

¶ 14. Vermont Mutual argues that because we concluded in *Powers* that the primary insurer was only entitled to a pro rata share, our discussion of allocating the entire offset to the primary insurer was unnecessary to the holding and therefore noncontrolling dicta. We disagree. Our conclusion that the primary UIM insurer was entitled to *at least* its pro rata share of the offset rested on cases allocating the entire offset to the primary insurer. Moreover, we explicitly "emphasize[d] that the allocation set forth . . . [was] limited to the circumstances of [that] particular case." *Id.* at 242, 732 A.2d at 739. Furthermore, even if *Powers* did not control, it foreshadowed today's decision, which is in line with the majority view, and we see no reason to divert from its course.

¶ 15. Vermont Mutual's second argument is that applying the offset pro rata preserves all UM/UIM insurers' statutory right to subrogation in every case, but that applying the offset entirely to the primary coverage will, in some situations, deny an excess UM/UIM insurer subrogation in violation of § 941(e). Essentially, Vermont Mutual argues that § 941(e) creates an entitlement to subrogation for each UM/UIM insurer in each case that would be defeated by any system of apportionment that is not a pro rata system. We find this argument unpersuasive. Under § 941(e), UM/UIM insurers are "entitled to the proceeds of any settlement or recovery from any per-

---

* That remains the majority view today. See *Chicago Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 503 So. 2d 916, 918 (Fla. Dist. Ct. App. 1987); *Ga. Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 336 S.E.2d 237, 237-38 (Ga. 1985); *Chester v. State Farm Mut. Auto. Ins. Co.*, 591 N.E.2d 488, 493-94 (Ill. App. Ct. 1992); *Cobb v. Allstate Ins. Co.*, 663 A.2d 38, 40 (Me. 1995); *Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 614 So. 2d 918, 922-23 (Miss. 1992). But see *Ellis v. Royal Ins. Cos.*, 530 A.2d 303, 311 (N.H.

1987) (applying a "sliding-scale" approach by apportioning the credit between insurers based on how much money each contributes in fact to a settlement or court award).

son legally responsible for the damage or personal injury." Section 941 entitles UM/UIM insurers to indemnity for amounts that should have been paid by the tortfeasor, and prevents the insured from recovering twice for the same injury. However, as Vermont Mutual concedes, "Vermont's Underinsured Motorist Statute does not directly provide for allocation of the credit created by the liability payment." We agree; the statute simply does not speak to apportionment. Even so, we must construe § 941(e) according to its purpose and the intent of the Legislature. See *In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264 (Where the plain language does not evince legislative intent, we must construe the statute according to intent gleaned "through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law."). The UM/UIM scheme exists for the benefit of insureds. As stated, the overriding purpose of the statute is to protect the insured from the negative consequences of being in an accident with a financially irresponsible driver. *Feeley*, 2005 VT 87, ¶¶ 8-9. UM/UIM coverage is intended to place insured persons in the same position they would have been in had the tortfeasor-driver been adequately insured. *Hubbard*, 2007 VT 121, ¶ 7. These purposes are best effectuated by policies that ease the process of settling claims. Applying tortfeasor payments fully to the primary coverage first increases the chances that the insured will need to deal with only one insurance company. See *Cobb*, 663 A.2d at 41 (recognizing this benefit of the majority rule).

¶ 16. We hold that as long as the total UM/UIM coverage is offset by the liability payment, § 941(e) is satisfied. As stated, in so holding, we follow the majority of jurisdictions that have confronted the issue, some of which have also done so with similarly limited statutory guidance. *Ga. Farm Bureau Mut. Ins. Co.*, 336

S.E.2d at 237-38 (applying majority rule where statute entitling insurers to subrogation "provides no guidance for resolution of the issue" (quotation omitted)); *Cobb*, 663 A.2d at 40, 40 n.4 (same); see also *Chicago Ins. Co.*, 503 So. 2d at 918 (applying majority rule); *id.* at 919 (Glickstein, J., dissenting) (noting that statute entitling insurers to subrogation failed to answer the question).

¶ 17. Vermont Mutual's third argument is that fairness and public policy require pro rata allocation of the offset. It argues that the policy limits — rather than the insurer's status as primary or excess insurer — indicate the actual risk taken by insurers, and that allocating the offset based on policy limits will encourage insurers to issue high-limit policies, which will protect the public more effectively than low-limit policies. We find this unpersuasive.

¶ 18. We decline to engage in lengthy analysis about the relative risks assumed between the UM/UIM insurers. We assume that competitive insurers issuing policies in this state are more than capable of assessing risk and setting premiums accordingly. However, we briefly address Vermont Mutual's fairness argument — that it should be rewarded with a greater portion of the offset because it assumed a higher risk in issuing a higher limit policy. First, we note that an insurer's reward for taking risk is the premium it collects. Risk-reward equivalency would tend to indicate that the insurer who takes a greater risk by issuing a higher limit policy would be rewarded by collecting higher premiums, see 5 L. Russ & T. Segalla, Couch on Insurance § 69:1, at 69-5 (3d ed. 2005) ("The amount of the premium varies in proportion to the risk assumed."), not that the risk taker should be rewarded if the danger that made the policy risky comes to fruition. Second, we find unpersuasive Vermont Mutual's suggestion that it faces more risk than State Farm despite being

the excess insurer because it has higher policy limits. An insurer faces less risk from the possibility of an accident where its policy provisions make it excess than the primary insurer faces from the same possibility. As we have said before, the denial of any offset to the excess insurer is a logical corollary to the lack of risk it faces until the primary policy is exhausted. *Powers*, 169 Vt. at 240, 732 A.2d at 737.

¶ 19. As a policy matter, Vermont Mutual argues that rewarding insurers for issuing higher limit UM/UIM policies by allocating the offset pro rata will encourage all insurers to issue higher limit policies. They point out that our decision in *Powers* contemplated adopting a rule requiring all insurers to pay on a pro rata basis if a showing of need, based on public policy grounds, was made. *Id.* at 239 n.3, 732 A.2d at 737 n.3. However, the public policy we were concerned with in *Powers* involved the insured's ability to settle a claim more easily and efficiently despite insurers entrenching themselves in litigation. Similarly, pro rata apportioning of liability where "other insurance" provisions are mutually repugnant rests on the important policy goal of helping insureds to settle claims. As noted, the policy of helping insureds to settle claims favors applying the offset fully to the primary coverage because that allocation increases the chance that the insured will need to deal with only one insurance company. Additionally, "[t]he reduced need for litigation will not only result in lessened costs to consumers, but will reduce the strain on overburdened judicial resources." *Id.* at 241, 732 A.2d at 738 (quotation omitted). A pro rata rule would leave more insurers in the litigation, further frustrate the insured's recovery, and consume additional judicial resources.

¶ 20. In order to be fair, in this context, we need only be consistent. Consistency allows insurers to accurately assess the risk associated with the policies they issue. Premiums will adjust, if necessary, to reflect insurance companies' exposure to risk based on whatever rule stands. Our decision that the insurer who stands first in line to pay should also stand first in line to collect is consistent with *Powers* and with the majority of jurisdictions that have addressed the issue.

¶ 21. Because we see no reason to divert from the course we set in *Powers*, we explicitly hold today that primary UM/ UIM insurers are entitled to offset their coverage by the full amount of a tortfeasor's liability payment. Any remaining offset inures to the excess insurer's benefit. Thus, the tortfeasor's $100,000 liability payment nullifies State Farm's primary UIM coverage of $50,000 and offsets Vermont Mutual's excess UIM coverage by $50,000. The trial court properly granted State Farm's motion for summary judgment.

*Affirmed.*