Keenan v. Geico Gen. Ins. Co., No. 604-8-09 Wrcv (Hayes, J., Nov. 30, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor Unit | Docket No.  604-8-09 Wrcv |

Anne Keenan, individually and as executor and |
administrator of estates, and |
Nancie Hazell, individually, |
  Plaintiffs |
|
 v. |
Geico General Insurance Co., |
  Defendant |
|

### DECISION ON GEICO'S SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff Anne Keenan is the administrator for the estates of her deceased mother and aunt, both of whom died in a fatal car accident in August 2007.  After resolving the wrongful-death claims against the tortfeasor for the policy limits, plaintiff turned to the underinsured-motorist policy provided by Vermont Mutual Insurance Company and settled both estates' claims for about 20% less than the available limits.  Plaintiff now seeks additional recovery under a second, stacked underinsured-motorist policy provided by defendant GEICO General Insurance Company.  In its present motion for summary judgment, GEICO argues that plaintiff should be barred from recovering under the excess underinsured-motorist policy because (1) plaintiff failed to obtain GEICO's consent before settling with Vermont Mutual and (2) plaintiff failed to exhaust the coverage limits of the Vermont Mutual policy.

The following facts are undisputed.  The fatal accident was solely caused by the negligence of the tortfeasor.  After the accident, plaintiff settled both estates' claims against

the tortfeasor for the full amount of his available automobile-liability polices, which amounted to $40,000 for each estate, for a total payment of $80,000.

Plaintiff then turned to the stacked underinsured-motorist policies. It is undisputed that the Vermont Mutual policy that covered the automobile involved in the accident is the primary policy and that the GEICO policy that covered the passenger provides excess UIM insurance. See *State Farm Mut. Auto Ins. Co. v. Powers*, 169 Vt. 230, 235–36 (1999) (stacked UIM insurers may establish priority of coverage). The primary policy had a combined single limit of $500,000 in UIM insurance, which meant that the estates had access to $420,000 in combined gap coverage under the primary UIM policy after subtracting the payments from the tortfeasor. See *Webb v. United States Fidelity & Guaranty Co.*, 158 Vt. 137, 141–42 (1992) (explaining calculation for offset from tortfeasor's payments). Plaintiff nevertheless chose to settle the claims of both estates with Vermont Mutual for the combined amount of $350,000. In other words, plaintiff agreed to settle their UIM claims against Vermont Mutual for an amount that was $70,000 less than was available under the policy limits.

Plaintiff sought GEICO's consent to the settlement with Vermont Mutual. GEICO first requested additional information as to the allocation of the settlement between the mother and aunt, which was apparently relevant to GEICO's position that it does not owe any duty of coverage to the aunt.[1] Plaintiff indicated that there was no specific allocation and asked for GEICO's preference on the matter, but the dialogue did not progress, and no agreement was reached. GEICO then sent a formal letter advising that it was nevertheless willing to consent to

---

[1] GEICO provided UIM insurance to mother, who was the passenger in the vehicle, and GEICO has taken the position that it owes no duty of coverage to aunt. This issue was discussed in the court's opinion on GEICO's first motion for summary judgment. The court ruled that there is a genuine issue for trial as to whether the mother and the aunt were residents of the same household.

the settlement with a reservation of its rights to assert defenses to coverage, including (1) plaintiff's failure to exhaust the policy limits of the primary UIM coverage, and (2) the issue of whether the aunt's estate was entitled to coverage under the GEICO policy. GEICO also insisted that it was entitled to the full $500,000 credit in the event that plaintiffs pursued a claim against the excess UIM insurance policy. It is a matter of some dispute whether this proposal ever reached the point of a meeting of the minds, but for the reasons discussed in this opinion, this dispute is not material.

Plaintiff formalized the settlement with Vermont Mutual for the amount of $350,000 and the primary UIM carrier was therefore dismissed from the case. Plaintiff allocated the amounts 50/50 between the two estates and advised GEICO of this allocation after the settlement was finalized.

Plaintiff now seeks additional recovery from GEICO under the excess UIM insurance policy, which has a coverage limit of $100,000 per person and $300,000 per accident. Under the UIM stacking rules, therefore, GEICO theoretically has exposure for up to $100,000 per estate for any amounts that plaintiffs recover in excess of a combined total of $500,000. GEICO contends, however, that plaintiff should be barred from recovering any amounts under the excess policy because she failed to obtain GEICO's consent before settling with Vermont Mutual. GEICO also contends that plaintiff should be barred from recovering because she failed to exhaust the available coverage limits of the primary UIM policy. GEICO argues that this result is required by the plain language of its UIM policy, the language of *Powers*, and the holdings of out-of-state cases such as *Nicholson v. General Casualty Co. of Wisconsin*, 636 N.W.2d 372, 375–76 (Neb. 2001).

3

In response, plaintiff concedes that GEICO should be given an offset or credit for the full $500,000 before it is required to pay any UIM benefits in this case.  Based on this concession, plaintiff argues that she should be permitted to proceed with her claims against GEICO because the insurer is in exactly the same position it would have been in if she had settled with Vermont Mutual for the full amount of its policy limits.  In other words, plaintiff argues that there is no prejudice to GEICO that would warrant the entry of judgment in its favor on either the "consent to settle" issue or the exhaustion issue.

On GEICO's motion for summary judgment, the insurer has the burden of demonstrating that there are no genuine issues of material fact and that there is a valid legal theory that entitles it to judgment as a matter of law.  *Price v. Leland*, 149 Vt. 518, 521 (1988).

GEICO's first argument is that plaintiff should be barred from recovering because she failed to obtain GEICO's consent to the settlement with Vermont Mutual.  The general rule here is that an insurer must establish that it was prejudiced by the insured's failure to obtain consent to an underlying settlement before a "consent to settle" provision will be enforced to bar coverage.  *Travelers Indem. Co. v. Eitapence*, 924 F.2d 48, 50 (2d Cir. 1991); *Brunet v. American Ins. Co.*, 660 F.Supp. 843, 846 (D. Vt. 1987); 9 Couch on Ins. § 124:8; see also *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 451–53 (Pa. 2008) (analyzing prejudice in the context of an excess UIM insurer's claim that the insured failed to obtain its consent to settle with the primary UIM insurer).  For example, prejudice may be shown in cases where the unconsented-to settlement establishes damages in an amount that triggers the insurer's coverage.  *Eitapence*, 924 F.2d at 49–50.  Another common example of prejudice may be seen in cases involving subrogation rights.  *Muir v. Hartford Accident & Indem. Co.*, 147 Vt. 590, 595 n.4 (1987).

4

In this case, GEICO has neither asserted that any subrogation interests were compromised by the settlement nor set forth any specific facts in its motion for summary judgment that would establish a claim of prejudice on its behalf, such as facts showing that it lost an opportunity to contest the amount of damages in this case. See *Price*, 149 Vt. at 521 (explaining that the moving party bears the burden of establishing that the undisputed facts entitle it to judgment as a matter of law on the challenged issue); *Schneider*, 960 A.2d at 452–53 (explaining that actual prejudice must be shown rather than abstract prejudice). GEICO asserts that it was prejudiced by the amount of the settlement, but plaintiff's concessions mean that there is no risk of extra-contractual exposure in this case; GEICO's exposure is exactly the same as it would have been if the estates had settled both claims for the full amount of the primary UIM coverage. GEICO also appears to assert that it was prejudiced by the lack of information regarding the proposed allocation between the two estates, but GEICO has neither established why this information would have been crucial to a good-faith decision as to whether to consent to the settlement nor established that it even insisted upon this information in its formal consent letter. On the contrary, GEICO's representative seemed to indicate in the consent letter that the only preconditions imposed on the settlement were that GEICO reserved its rights to assert the defenses of non-coverage and exhaustion. For these reasons, the court cannot conclude that GEICO has established that it is entitled to judgment as a matter of law on the "consent to settle" issue.

The second question is whether the estates should be barred from recovering under the excess UIM policy because they failed to exhaust the full amount of coverage available under the primary UIM policy. The general background here is that UIM insurance in Vermont

5

provides "gap coverage" when (1) a tortfeasor's liability insurance is insufficient to compensate the insured for the full amount of her injuries, and (2) the tortfeasor's liability-insurance limits are less than the limits of the insured's UIM coverage. *Humphrey v. Vermont Mutual Auto. Ins. Co.*, 2009 VT 53, ¶ 8, 186 Vt. 537 (mem.). UIM insurance therefore "fills the gap between a tortfeasor's liability coverage and an insured party's [UIM] coverage," and the purpose of the coverage is to "protect the insured from the misfortune of being involved in an accident with a financially irresponsible driver." *Id*. (quotations omitted). In cases where more than one UIM policy is available, the insured may stack the two policies. The multiple insurers may then establish a priority of coverage by designating themselves as either primary or excess, meaning that the "[t]he excess policy becomes effective only after the primary policy is exhausted." *Id*., ¶ 10; *State Farm Mut. Auto Ins. Co. v. Powers*, 169 Vt. 230, 239 (1999).

Defendant argues that the so-called exhaustion rule is dispositive here, but a careful reading of *Humphrey* and *Powers* shows that those cases were not discussing the same issue as has been presented in this case. *Powers* was mainly concerned with the initial question of whether stacked insurers may designate themselves as the primary or excess UIM insurer, and the *Powers* court answered this question in the affirmative. *Powers* then ruled that the damages in that case, which had already been determined by arbitration, must be paid first by the primary UIM carrier up to the limits of its coverage, and that the obligations of the excess insurers were triggered only if the primary UIM insurance was exhausted before the arbitrated amount was paid in full. 169 Vt. at 239. *Powers* said nothing about whether a plaintiff would be entitled to recover against the excess carrier in a case where damages were not yet

6

established if she settled with the primary carrier for less than the policy limits but then offered the excess carrier a credit for the full amount of the underlying policy.

*Humphrey* was mainly concerned with the question of whether the offset from the liability insurance should be counted entirely towards the primary UIM insurer or whether it should be shared between the UIM carriers on a proportional basis. The ruling was that the tortfeasor's payments should be applied fully to the primary coverage first because this approach was most consistent with the stacking rules established in *Powers* and because the outcome focused the dispute on the obligations of the excess carrier and thereby "increase[d] the chances that the insured will need to deal with only one insurance company." 2009 VT 53, ¶¶ 15–16. Again, *Humphrey* said nothing about whether a plaintiff would be entitled to recover against the excess carrier if she settled with the primary UIM carrier for less than the policy limits. The mention of the exhaustion rule in *Humphrey* was only by way of recounting the basic stacking rule articulated in *Powers*.

A review of out-of-state cases shows a wide variety of outcomes as to whether a plaintiff may recover underinsured-motorist benefits after settling with either the tortfeasor or the primary UIM carrier for less than the policy limits. Some states have statutes that require exhaustion of the tortfeasor's coverage limits by actual payments or settlements, and the courts of those states have concluded that offers of credit are not equivalent to exhaustion of policy limits under their statutes, e.g., *Curran v. Progressive Northwestern Ins. Co.*, 29 P.3d 829, 833 (Alaska 2001); *Continental Ins. Co. v. Cebe-Habersky*, 571 A.2d 104, 106 (Conn. 1990); *Nicholson*, 636 N.W.2d at 375–76. Other states have concluded that the policy-based exhaustion provision plainly and unambiguously requires exhaustion by payments rather than

exhaustion by credits or offsets, e.g., *Danbeck v. American Family Mut. Ins. Co.*, 629 N.W.2d 150, 156 (Wis. 2001). Yet other states have concluded that exhaustion provisions are entirely void as a matter of public policy, e.g., *Brown v. USAA Casualty Ins. Co.*, 840 P.2d 1203, 1204 (Kan. Ct. App. 1992), but that the UIM insurer should nonetheless be allowed a credit for the full amount of the tortfeasor's liability coverage in order to prevent the insurer from having to pay extra-contractual benefits, e.g., *Hill v. American Family Mut. Ins. Co.*, 249 P.3d 812, 817–18 (Idaho 2011). Other states have concluded that exhaustion requirements are enforceable if the insured is permitted to constructively exhaust the underlying policy limits by offering the UIM carrier a credit or offset in that amount, e.g., *Horace Mann Ins. Co. v. Adkins*, 599 S.E.2d 720, 727 (W. Va. 2004); see also *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 451 (Pa. 2008) (affirming use of credit where plaintiff was seeking excess UIM benefits after settling claim against primary UIM insurer for less than the full policy limits).

In choosing from among the various approaches, this court must remain mindful of the various policies and interests that have already been expressed and protected by the Vermont courts. One of the most important values is that underinsured-motorist policies should not contain policy provisions that dilute or reduce the amount of coverage available to motorists. *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 499 (1987); *Muir*, 147 Vt. at 593. In other words, the court must consider whether GEICO's exhaustion requirement would reduce the total amount of UIM coverage available in cases where the injured party settles with the tortfeasor or the primary UIM carrier for less than the available policy limits. Clearly, it would. GEICO's position is that the availability of coverage under the excess UIM policy is completely eliminated if the plaintiff settles for even marginally less than the full amount of the underlying

8

policies, regardless of whether there were valid, non-merits-based reasons for the plaintiff's decision.  See *Hill*, 249 P.3d at 819 (explaining that the settlement amount is not necessarily proof of the total amount of damages because there are many other reasons why claimants might settle for less than the policy limits, such as when the insurance limits are too low to justify trial, or when the insured has immediate financial or medical reasons for needing a quick settlement, or when the costs of litigation exceed the marginal benefit available from a full recovery under the policy.)  GEICO's position, therefore, would impermissibly reduce the amount of UIM coverage available to plaintiff even though she claims that the estates have not yet been fully compensated.

Another important value is that underinsured-motorist policies should be construed and effectuated in a way that promotes voluntary settlements and that eases the process of settling claims.  *Humphrey*, 2009 VT 53, ¶ 15.  In this case, the process of settling claims is greatly eased if the plaintiff is allowed to settle her claims with the tortfeasor and the primary UIM carrier for whatever value she deems appropriate and expedient under the circumstances.  It would be completely contrary to this expressed value to require the plaintiff to pursue her claims against the tortfeasor or the primary UIM carrier all the way to trial in order to preserve the availability of a claim against the excess UIM carrier; such a rule would deny the plaintiff "the perfectly reasonable choice of saving months, if not years, of delay, trial preparation expense, and all the ensuing wear and tear by simply accepting the offer."  *Hill*, 249 P.3d at 819 (quotation omitted). Courts in this state have been encouraged to favor insurance-resolution approaches that "increase[] the chances that the insured will need to deal with only one insurance company." *Humphrey*, 2009 VT 53, ¶ 15.

9

A third important value is that insurance policies should not be interpreted in a narrow way that defeats recovery of paid-for benefits even when the insurer is not thereby prejudiced, e.g., *Eitapence*, 924 F.2d at 50; *Country Mut. Ins. Co. v. Fonk*, 7 P.3d 973, 977 (Ariz. Ct. App. 2000). In this case, the insurer's position stretches the meaning of the exhaustion requirement beyond its intended purpose, which was to "absolve the insurer from liability for those uncollected amounts which were below the stated limits of the underinsured tortfeasor's policy." *Bogan v. Progressive Casualty Ins. Co.*, 521 N.E.2d 447, 453 (Ohio 1988). There is no risk of the excess carrier assuming extra-contractual coverage here, because plaintiff has conceded that the excess carrier will be entitled to an offset in the full amount of the underlying policy limits. In other words, the excess coverage will not be triggered unless the estates prove at trial that their combined damages exceed the full amount of coverage available under the primary policy. GEICO is thus in exactly the same position it would have been in if plaintiff had settled with the primary UIM carrier for the full amount of its policy; there is no prejudice. See *Horace Mann*, 599 S.E.2d at 727–28 (explaining that there is no prejudice to the insurer when the plaintiff will still have to prove at trial that the amount of her loss will exceed the amount that triggers coverage).

A final policy interest is that UIM coverage normally focuses on a comparison of the policy limits that existed at the time of the accident rather than the amounts actually paid to the insured. *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 8, 175 Vt. 61. GEICO appears to be upending this understanding by declaring that its coverage amounts are dependent upon the amounts actually collected by the plaintiff. A rule that is more consistent with state law would be the one proposed by plaintiff: that her right to recover against the excess insurer depends

on whether she can prove at trial that her damages exceeded the coverage limits of the underlying policies rather than whether she actually collected the full amount from the underlying insurers.

For all of these reasons, the court concludes that GEICO's exhaustion provision is enforceable, but that it must be construed to permit exhaustion by credit as well as exhaustion by actual payments. Plaintiff may proceed with her claim against GEICO so long as she offers the insurer a credit for the full amount of the primary UIM policy.

A few arguments remain for discussion. One involves GEICO's assertion that many of the aforementioned cases are completely inapposite because they involve the question of whether a plaintiff must exhaust the tortfeasor's liability-insurance policy before seeking UIM coverage in the first instance, rather than the question of whether a plaintiff must exhaust the primary UIM coverage before seeking excess UIM coverage. On this point, it must be noted that the aforementioned out-of-state cases are cited only for their persuasive value; the controlling rules and policies here are taken from the Vermont cases. In any event, GEICO's proposed distinction has not been treated as material in the existing cases. See *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 449–50 (Pa. 2008) (explaining that the same policy concerns are involved in both scenarios).

GEICO also argues that its policy provision cannot be disregarded here because it has been approved by BISHCA. It is true that BISHCA reviews insurance policies for compliance with state law, that BISHCA's determinations are entitled to a certain amount of administrative deference, and that BISHCA did not prohibit the policy provision at issue here. See *Davis v. Liberty Mut. Ins. Co.*, 19 F.Supp.2d 193, 200 (D. Vt. 1998) (discussing generally the deference

11

owed to BISHCA on such matters).  But it remains the role of this court to ensure that insurance policies are given an interpretation that is consistent with the purposes of the UIM statute. *Muir*, 147 Vt. at 594–95.  In this case, the court is not ruling that the exhaustion clause is entirely void but rather holding that the clause must be interpreted to permit "exhaustion by credit" as well as "exhaustion by payment."  For the foregoing reasons, this is the result that best serves the policies protected by the UIM statute.

## ORDER

Defendant GEICO General Insurance Company's Second Motion for Summary Judgment (MPR #7), filed May 26, 2011, is ***denied***.

Dated at Hartford, Vermont, this _____ day of November, 2011.


_____
Katherine A. Hayes
Superior Court Judge

12